No. 43.—JOHN J. HALEY, *et al.* plaintiffs in error, *vs.* JOHN B. REID, defendant.

[1.] Stock in a corporation is not subject to be levied on, under an attachment against the owner of the stock.

Attachment, in Spalding Superior Court. Decided by Judge STARK, May Term, 1854.

John B. Reid had sued out an attachment against John J. Haley and David S. Mills; which attachment had been levied by the Sheriff, on stock of defendant in the Griffin and West Point Plank-road Company; the levy being made by entry to that effect, on the attachment by the Sheriff. At the term to which the attachment was returnable, the Counsel for defendants moved to dismiss it on several grounds, the only one of which necessary to be stated was, that an attachment cannot, under the laws of this State, be levied on stock of an incorporated company.

The Court over-ruled the motion, and defendants excepted.

HALL & CAREY; GREEN; MARTIN, for plaintiffs in error.

McCUNE, for defendant.

*By the Court.*—BENNING, J. delivering the opinion.

[1.] Can an attachment, against a stockholder in a corporation, be "served and levied" on the stock of the stockholder, in the corporation? This is the only question which it is necessary to decide in this case.

The attachment, in this case, was not served by summons of garnishment—by a summons of garnishment treating the corporation as the debtor of the defendants in the attachment, for so much stock held in the corporation by the defendants. I do not mean to say that the attachment might have been served in that way. I express no opinion, as to whether such a garnishment would lie, in such a case, or not. In the case, however, as it is, attachment by the garnishment mode was not

attempted.    The Sheriff's return is, "I have levied the within attachment, on one hundred shares in the Griffin and West Point Plank-road Company.

May an attachment be thus levied on the debtor's stock in a corporation ?

The Attachment Act of 1799, makes it the duty of the officer, who is to execute the attachment, "to serve and levy the same upon the estate, both real and personal, of such debtor".

And the nineteenth section in the charter of the Griffin and West Point Plank-road Company, declares, "That the shares in the stock of said company shall be deemed personal property, and may be transferred as shall be prescribed by the by-laws of such company". (*Pamph. Acts of* 1849, 231.)

As to the stock, then, in this particular corporation, it, at least, is to be deemed personal property.

Still, although personal property, is it subject to attachment?

Attachment becomes a means of transferring the property attached.    That property, first or last, has to be sold to satisfy the attachment.    But for the transfer of *this* sort of personal property, this stock, in this corporation, another mode is, by the charter itself, provided, namely: such a mode as may have been prescribed "by the by-laws of such company".    And what reason is there why, in the interpretation of these words of the charter, the maxim, *inclusio unius exclusio alterius,* should not apply ?    I know of none.

Interpreted by this maxim, this part of the charter repeals the Act of 1799 if, indeed that Act, itself, intended to make stock of this kind subject to be attached, as this stock was attached.

But did that Act intend to make such stock, so subject, to be attached ?

The words of that Act, as we have seen, are "the estate, both real and personal"—the attachment is to be levied on "the estate both real and personal".    This Act was passed on the 18th of February, 1799.  (*Marb. and Craw. Dig.* 41.)

Two days before an Act in *pari materia,* having in it the same words, had been passed by the same Legislature, viz : the

Haley *et al. vs.* Reid.

Judiciary Act of 1799.   The thirty-first section of that Act declares, "That all executions may be levied on the estate, both real and personal, of the defendant or defendants".   (*Id.* 301.)

And by Legislative interpretation, these words in the Act of 1799, do not include stock owned by any person in a corporation, for in 1822 the Legislature passed an Act, "to make bank and other stock subject to execution," which of course, it would not have done, if it had considered such stock already subject to execution by the Act of 1799.

This interpretation, it is believed, was that which ' was put upon these words also by the Judiciary.

And it does not seem very easy to put any other on the words. . To "levy" means to seize—to take corporeally.   It follows that what cannot be seized—what cannot be taken corporeally, cannot be levied on.   And as the law is not to be presumed to require impossibilities, when it requires an executing officer to levy on both personal and real estate, it is not to be presumed to intend to require him to levy on such personal or real estate as it is impossible to levy on ; that is to say, as it is impossible to seize—to take corporeally.   What precise idea the Sheriff meant to express by the word "*levied*" when he returned that he had " levied" the attachment upon one hundred shares in the corporation, I am at some loss to conceive.

If the words " estate, both real and personal," in this, the great Judiciary Act of 1799, are not sufficient to include stock owned by individuals in corporations, the same words in the Attachment Act, passed only two days afterwards, must be construed, in like manner, not to include such stock; for the Act first mentioned is intimately in *pari materia* with the one last mentioned.

Upon the whole, therefore, it may be said that the attachment having been levied in the manner aforesaid, only upon stock owned by the defendants in a corporation, was not well levied; and therefore, that it should have been dismissed; and so, that the Court below, in not dismissing the attachment on that ground, erred.