WILLIAM E. FOWLER, *vs.* ROBERT DICKSON, ROBERT D. TWEED-DALE and GEORGE N. THOMPSON, partners, trading under the firm name of DICKSON AND TWEEDDALE.

*Foreign Attachment—Special Appearance—Motion to Vacate Sheriff's Return—Garnishment—Attachment of Shares of Stock—Procedure under the Statute—Formal Statutory Requisites—No Substituted Method—Voluntered Acts or Waivers No Aid to Legality.*

1.     Prior to the enactment of the statutes relating to attachments and garnishments, there was no proceeding known to the laws of Delaware whereby the lands, chattels, debts or shares of stock of a defendant in an action, were subject to preliminary attachment for the ultimate satisfaction of the plaintiff's demand.

2.     The statutes of the State of Delaware, relating to processes of attachment and garnishment, are in derogation of the common law, They follow as their original the Custom of London, the essential charter-

istic of which was the right of the plaintiff, at the initial stage of the case, to attach in the hands of a debtor of the defendant a debt due the defendant, and appropriate it to the satisfaction of the plaintiff's demand.

3.    Process of foreign attachment may issue against any person, not an inhabitant of this State, and against any corporation, not created by or existing under the laws of this State, upon causes of actions and for amounts indicated by the statutes.

4.    The method of executing process of foreign attachment is dependent upon the character of the property of the defendant sought to be attached.    If the possession of the property can be acquired, the attachment is executed by the sheriff taking it into his possession; if actual possession cannot be had, as in the instance of a debt due the defendant, the writ is executed by employing the co-relative process of garnishment; if the thing is neither tangible property nor a debt, such as the shares of stock of the defendant in a corporation, the writ must be executed in the particular manner prescribed by the statute providing the procedure.

5.    As shares of stock are property of a peculiar character, being in their elemental nature neither debts due by the corporation to the owners of the shares, nor personal property of the defendant, capable of  seizure and sale under execution, but being rather the  evidence of property, they are not subject to attachment or garnishment under the  provisions of *Chapter* 104 *of the Revised Code*, relating generally to attachments, or under *Chapter* 90, *Volume* 14, *Laws of Delaware*, providing the method of garnisheeing corporations.

6.    The general provisions of the *General Corporation Laws* (*Sec.* 48, *Chapter* 167, *Volume* 22, *Laws of Delaware*) relative to service of legal process upon corporations, do not supersede or by implication repeal the particular provisions of the earlier law (*Sec.* 13-17, *Chapter* 70, *Revised Code*) relating especially to the attachment of shares of stock in corporations.

7.    The general provisions of the *General Corporation Laws* relative to service of legal process upon corporations in actions instituted against them, do not relate to or affect the execution of attachment or garnishment process with respect to which the statutes have made general provisions, or of the attachment of shares of stock in a corporation with respect to which the statute has made particular provisions.

8.    Service of process in actions instituted against persons or cor· porations may be made by the alternative methods provided by the statute, as the thing the defendant is summoned to do is to appear and defend the action at some time in the future.    Service of process in ·attachment or garnishment proceedings is never made upon the defen-·dant in the action, but is made, according to the character of the property to be attached, upon a personal garnishee or upon such an officer of a corporation as is particularly named or designated, in the exact manner provided by the statutes, as the attachment or garnishment takes effect :not in the future, but immediately.

9.    The attachment of shares of stock rests wholly on judicial pro-·cess and its legality depends on the due and exact pursuit of the steps

prescribed by *Secs.* 13-17, *Chap.* 70, *Revised Code.* No method of procedure may be legally substituted for that provided by the statute directing that "a certified copy of the process shall be left by the officer with the President, Cashier or Treasurer of the Company, who shall give such officer a certificate of the number of shares held or owned by the debtor in such company * * * * * * * ."

If such a corporation be one established under the laws of the State of Delaware, and its President, Cashier and Treasurer reside and remain out of the State of Delaware, then under existing law, the shares of stock of such a corporation cannot be attached under foreign attachment process.

10. The corporation or the officers cannot waive the formal requirements of the statute in laying the attachment of shares of stock, as the legality of the attachment cannot be aided by the voluntary acts or waiver of technicalities by the corporation.

11. The provisions of *Chapter* 532, *Volume* 16, *Laws of Delaware*, apply to an investigation of the allegations in the affidavit upon which attachment process is founded, and do not limit or otherwise affect the right of an inquiry as to the execution of the process and the jurisdiction of the Court to entertain the action.

Del. cases cited: *Smith vs. Armour*, 1 *Penn.* 361; *Reynolds vs. Howell*, 1 *Mar.* 59; *Vogle vs. New Granada C. & S. W. Co.*, 1 *Houst.* 294; *Mann vs. Peer*, 4 *Penn.* 279.

*Del. Statutes: Rev. Code Chap.* 104.   14 *Del. Laws, Chap.* 90; 22 *Del. Laws Chap* 167, *Sec.* 48; *Rev. Code, Chap.* 70 *Secs.* 13-17.

(*December* 7, 1909.)

PENNEWILL, C. J., and WOOLLEY and HASTINGS, J. J., sitting.

*Willard Saulsbury* and *Hugh M. Morris* for plaintiff.

*H. H. Ward, Andrew C. Gray* and *John F. Neary*, for defendants.

Superior Court, New Castle County, November Term, 1909. (Argument had at the September Term, 1909.)

FOREIGN ATTACHMENT CASE (No. 10, September Term, 1909).

WOOLLEY, J., delivering the opinion of the Court:

On the twenty-first day of May, A. D. 1909, a writ of foreign attachment was sued out of this court, in the above entitled case,

and was executed by the sheriff in the manner shown by his return as follows:

"ATTACHED all of the shares of the capital stock in The German Union Fire Insurance Company of Baltimore, a corporation of the State of Delaware, held or owned by Robert Dickson, Robert D. Tweeddale and George N. Thompson partners, trading under the firm name of Dickson and Tweeddale * * * * * defendants, * * * * * delivering on May 22, A. D. 1909, to Robert Penington, a director of the said The German Union Fire Insurance Company of Baltimore, personally, at the principal office or place of business in the State of Delaware of the said * * * * * * Company, a copy of the within process, duly certified by the Prothonotary of said Court; also by leaving the said duly certified copy of the within process at the principal office or place of business in the State of Delaware of the said * * * * * * Company * * * * * on the 22d day of May, A. D. 1909, being more than six days before the return of the within process, in the presence of the said Robert Penington, an adult person, who was and still is the agent in charge of the principal office or place of business in the State of Delaware of said * * * * * Company; neither the President, Cashier or Treasurer of said * * * * * * Company being in the State of Delaware, and the President of the said * * * * Company residing out of the State of Delaware; and received from said Robert Penington the certificate hereto attached and made a part of this return, showing the number of shares held or owned by said defendant in the said * * * * Company and garnishee fees paid.

"So answers CHARLES H. LIPPINCOTT,
*Sheriff.*"

The certificate of Robert Penington referred to in the sheriff's return and made a part thereof, is as follows:

"The said Robert Penington doth hereby certify that he is a director of The German Union Fire Insurance Company of Baltimore a corporation of the State of Delaware that the rincipal office or place of business in the State of Delaware of

the said  *  *  *  *  *  Company, was on the said twenty-second day of May, A. D. 1909, and still is, the office of the said Robert Penington, in the said City of Wilmington aforesaid; that the said Robert Penington.was, on the said twenty second day of May A. D. 1909 and still is, the agent of the said  *  *  *  *  *  Company, in charge of the principal office in said State of Delaware of the said  *  *  *  *  Company; that the said Robert Penington is neither the President nor the Cashier nor the Treasurer of the said  *  *  *  *  *  Company; that the said Robert Penington did not issue any stock of the said  *  *  *  *  *  *  Company  *  *  *  *  *  to the said Robert Dickson, Robert D. Tweeddale and George N. Thompson, partners, trading under the firm name of Dickson and Tweeddale, nor to any other stockholders thereof, nor did he take any part, directly or indirectly, in the issuance of any of the stock thereof; that the said Robert Penington has no knowledge whatever of the issuance of any of the stock of The German Union Fire Insurance Company nor the holder of the stock thereof on the twenty-second day of May A. D. 1909, nor of the numbers and distinguishing marks of the stock certificates thereof, excepting such information as is given him by the duplicate stock ledger of the said  *  *  *  company, which duplicate stock ledger is kept in the said principal office of the said  *  *  *  *  *  Company in the State of Delaware, in the charge of the said Robert Penington as the Agent as aforesaid;  *  *  *  *  that the said duplicate stock ledger shows that on the twenty-second day of May, A. D. 1909, the number of shares held and owned by Robert Dickson, Robert D. Tweeddale and George N. Thompson, partners trading under the firm name of Dickson and Tweeddale was two thousand five hundred and twenty five (2525), that the numbers of the certificate or certificates representing the shares held by the said Robert Dickson, Robert D. Teweddale and George N. Thompson, partners trading under the firm name of Dickson and Tweeddale, are as follows:    436-437-459-484-491-506

"IN WITNESS WHEREOF," etc.

At the return term of the writ, counsel for the defendants, to whom leave had been granted to appear specially, moved that the service of the writ be set aside and the sheriff's return thereon be vacated.

The principal ground upon which this motion is predicated is, that in the attempt to attach the defendants' stock in a corporation, it appears by the return that the writ was not executed in accordance with law, in that a certified copy of the process was not left by the sheriff with the President, Cashier or Treasurer of such corporation, pursuant to the provisions of *Chapter* 70 *of the Revised Code* relating to the attachment of stock.

The motion is resisted by the plaintiff upon the contentions:

*First:*   That the return shows that the writ was executed in accordance with law, in that the service was made pursuant to *Section* 48 *of the General Corporation Laws*, providing the method of service of legal process upon corporations;

*Second:*   That the German Union Fire Insurance Company of Baltimore, having filed its certificate showing the number of shares of its stock held by the defendant, waived all technicalities in the service which concerned itself alone;

*Third:*   That *Section* 16 *of the General Corporation Laws* makes shares of stock personal property, and as a result shares of stock may be attached under *Section* 4 *of Chapter* 104 *of the Revised Code*, as any other personal property;

*Fourth:*   That the defendant may not be heard in this form of motion to object to the quality or method of service;

*Fifth:*   That *Chapter* 90 *of Volume* 14 *Laws of Delaware* ( *Rev. Code p.* 569) never applied to the attachment of shares of stock.

*First:*   The first question presented by the motion is whether or not "the service was made (or the attachment laid) in compliance with law." In determining this question as presented, it devolves upon the Court to decide whether the general provisions of the General Corporation Laws relative to the service

of legal process upon corporations, supersede and by implication repeal the particular provisions of the earlier law relating especially to the attachment of shares of stock in corporations, and to decide in effect, whether stock of a Delaware Corporation, can, under existing law, be attached by foreign attachment, when the President, Cashier and Treasurer of such corporation reside and remain outside of the State of Delaware.

Prior to the enactments of the statutes relating to attachments, and garnishments, there was no proceeding known to the laws of Delaware, whereby the lands, chattels, debts, or shares of stock of a defendant, in an action, were subject to preliminary attachment for the ultimate satisfaction of the plaintiff's demands. In Delaware, as at the common law, a debtor's tangible property could alone be held for the satisfaction of his debts, and such property could be reached only under execution and levy after judgment.

The proceeding of foreign attachment had no existence at the common law. It was foreign to the laws of Delaware until established by statute in derogation of the common law. (*Smith vs. Armour*, 1 *Penn.* 361.)   It had its origin in the Custom of London (*Reynolds vs. Howell*, 1 *Mar.* 59), the essential characteristic of which was the right of the plaintiff, at the initial stage of the case, to attach in the hands of a debtor of the defendant, a debt due the defendant, and appropriate it to the satisfaction of the plaintiff's demand.

The first statute of the State of Delaware providing the process of foreign attachment, was enacted prior to the *Code* of 1852, and it made the remedy by such process sufficiently broad to include as well the characteristic of the Custom of London, as all property of the defendant, both real and personal. It provided that "A writ of Foreign Attachment may issue against any person not an inhabitant of this State," when certain requirements are met, which "shall command the officer to attach the defendant by all his goods and chattels, rights and credits, lands and tenements, in whose hands or possession, soever, the same may be found in his bailiwick, so that he be and appear at the

next Superior Court to answer the plaintiff's demand and that he summon the defendant's garnishees to appear at the said Court to declare what goods, chattels, rights, credits, money or effects of the defendant, they had in their hands respectively." (*Rev. Code, Ch.* 104 *Sec.* 19, 2.)

After the enactment of this statute, it was decided by the Superior Court at the Fall Sessions in 1856 (*Vogle vs. New Granada C. & S. N. Company,* 1 *Houst.,* 294) that a corporation, though an artificial person, was not embraced within the meaning of the word "person" as used in the act, and as a consequence a foreign corporation could not be sued by process of foreign attachment under the statute.

To meet the effect of this decision, the General Assembly of 1857, enacted *Chapter* 182 *of Vol.* 15, *Laws of Delaware,* providing that "A writ of foreign attachment may be issued * * * * against any corporation, aggregate or sole, not created by or existing under the laws of this State," * * * * * * (*Rev. Code, p.* 785.)

From the dates upon which those statutes were respectively enacted, authorizing the institution of actions by foreign attachment against both natural and artificial persons, until 1871, the only persons who could be summoned as garnishees in such actions, were natural persons. While after 1857 a corporation could be made a defendant in an action begun by foreign attachment, there was no law until 1871 making a corporation liable as garnishee, and until then, no law directing how a corporation might be summoned as garnishee. Therefore process by garnishment prior to that date was limited to natural persons. In the hands of natural persons only, could the goods and chattels, rights and credits of the defendant be attached.

For a number of years before corporations were liable to suit by foerign attachment, for more than twenty years during which natural persons alone could be summoned as garnishees, and during a like period before corporations were made liable as garnishees to attachment process, and before any method of summons upon corporations in attachment proceedings was

provided by statute, the statutes of this State provided for the attachment of shares of stock in a corporation.

This statute (*Sec.* 13 *to* 17 *of Chapter* 70 *Rev. Code*) provides, that, "The shares of any person in any incorporated company * * * * * may be attached for debt or other demand," and directs as the method by which this right so conferred may be exercised, that "When stock shall be so attached, a certified copy of the process shall be left by the officer with the president, cashier or treasurer of the company, who shall give such officer a certificate of the number of shares held, or owned by the debtor in such company, with the number, or other marks, distinguishing the same."

As shares of stock in a corporation were subject to attachment under this statute, long before corporations could be summoned as garnishees and when individuals alone could be garnisheed, and as this statutene it herby positive expression nor by implication provided a method of serving process upon the corporation in such proceeding, it is clear that in attaching stock the statute never contemplated a garnishment of the corporation of a service for that purpose, nor, in the absence of express provision, did it intend a service upon the corporation of the character employed in bringing suits.

What it did, and what it intended, was to provide a notice to the corporation, through certain selected officers, of the attachment of an interest in its property held by one of its stockholders, so that after attachment and notice, that interest might not be diverted by assignment or transfer from the lien of the attachment.

The provisions of the statute respecting the attachment of stock when considered with respect to the character of the property to be attached, are in harmony with the law and procedure upon the same subject in many other jurisdictions.

At common law, shares of stock in an incorporated company could not be the subject of attachment or levy. (*Foster vs. Potter*, 37 *Mo.* 525.) . They were considered neither a specific chattel nor a debt, but as Chief Justice Parker said in *Howe vs.*

*Starkweath*, 17 *Mass*. 240 (243). "They have more resemblance to choses in action,being merely evidence of property." Being intangible entities incapable of capture by execution and levy, and not being debts due and collectible from the corporation to the stockholder at his will, shares of stock cannot be subjected to legal process without specific legislation providing in substance all necessary procedure.(*Van Norman vs. Circuit Judge*,45 *Mich*. 204.)

As shares of stock are recognized as property of a peculiar character, being in their elemental nature neither debts due by the corporation within the meaning of the Custom of London nor personal property capable of seizure and sale under execution, and therefore subject to attachment; the different states have proceeded by special statutes to bring this class of property within a process whereby it may be reached to meet the demands of creditors of those holding such property. The different methods employed illustrate the different but uncertain characters in which shares of stock as property are viewed.

By the laws of Missouri, shares of stock are levied upon under execution similar to our writ of *fieri facias*, by leaving with the "secretary or other officer" a certified copy of the process and obtaining from him a certificate of the number of shares held by the defendant. The corporation is not summoned or otherwise served. The Sheriff proceeds to sell the stock under the same writ upon which he made the levy and then leaves with the secretary or other officer, a copy of his execution and return, which completes the attachment and transfer of title. (*Foster vs. Potter*, 37 *Mo*. 525.) Massachusetts has a law similar to that of Missouri, whereby levy upon shares is made by notice to an officer and the shares sold under the levy, without service or process on the corporation. (*Howe v. Starkweath*, 17 *Mass*. 240.)

By the laws of other states the process employed is attachment, though the procedure is similar to that of levy. The states having laws similar in all essentials to the law of Delaware in this particular, are Iowa (*Code of* 1897, *Sec*. 3894), Alabama (*Code of* 1907, *Sec*. 3474), Connecticut (*Code, Sec*. 833), Colorado (*Code, Sec*. 3617,3619), Illinois (131 *Ill*. 92; 24 *Ill. Ap*. 77).

24 Del.]　Fowler vs. Dickson and Tweeddale.　123

Opinion.

Neither the laws of these states nor the principle of the proceedings under them, require that service of process be made upon the corporation nor that the corporation be garnisheed, the requirement being that notice of the attachment of the stock as intangible things, shall be given an officer whose position brings him in touch with the stock and fiduciary affairs of the corporation.

It has been ruled in *Mann. vs. Peer*, 4 *Penn*. 279, that when a certified copy of the process has been left with the president, cashier or treasurer of the corporation, and the officer so notified furnishes a certificate of the number of shares held and owned by the defendant, the corporation does not have to answer as garnishee. The reason the corporation is not summoned and does not answer as garnishee is because it has no interest in the seizure of the stock as the property of the stockholder. (*Gottfried vs. Miller,* 104 *U. S.* 521.) It has nothing in its hands due or belonging to the defendant, which may be garnisheed. The only conceivable object in summoning a garnishee, in whose hands property or effects have been attached, is to hold him to his personal liability in case he fail, prior to final judgment, to discharge himself in the mode prescribed by law. (*Norvell v. Portes*, 62 *Mo*. 309.) As shares of stock do not constitute property in the hands of a corporation due the defendant, for the delivery of which, under garnishment, the corporation may be held liable, the corporation could not answer that it had or held anything of the defendant or that it owed anything to the defendant, and therefore it would have nothing to declare on answer and nothing of which to discharge itself.

The theory of laying an attachment by summoning a garnishee, as well as the theory of attaching stock in the manner prescribed by *Chapter* 70 *of the Revised Code*, are wholly different from the theory and principle involved in the service of legal process upon a person or corporation in an action instituted against them. When process is served upon a personal defendant in an action, whether such service be personal or by copy, he is. summoned to do an act in the future, that is, to appear at the.

next term and answer the plaintiff's plea.  When process is served upon a corporation defendant, either by delivering a copy thereof personally to its president, or in the event of his non-residence, by leaving a copy thereof at the principal office or place of business of the corporation in this State, the corporation is summoned in a method that will give it ample time without peril to obey the mandate of the writ.  But when a person is summoned as a garnishee, the summons must be personal and likewise when a corporation is summoned as a garnishee, the summons must be served personally upon those officers, who according to the designation of the statutes are best qualified by position and official relation to answer for the corporation and protect it from acts which might be done by other of its officers in ignorance of the attachment.  Having in view that service of process in actions instituted, has relation to the future and that a summons in garnishments takes effect immediately, the General Assembly of 1871, for the first time making corporations subject to the operation of the attachment laws and making them liable to garnishments, directed that corporations shall be summoned as garnishees by "serving of summons upon the president, treasurer, cashier or paying clerk."  (*Ch.* 90, *Vol.* 14, *Laws of Del., Code,* *p.* 569.)  Here the officers named are those, who by reason of their official connection with the corporation are best informed of any debt due by it to the defendant, so in statutes in Delaware and elsewhere providing for the attachment of shares of stock, it is apparent that legislatures have selected as the ones to receive notice of attachment of shares of stock those officers of the corporation who are best informed as to stock-holdings and who should be first informed of any attachment or levy upon those holdings."  In no State having statutes providing for the attachment or levy of shares of stock, have we found any requirement for service of legal process upon corporations the stock of which is being attached, as though such corporation were entitled to service, nor have we found any State that permits any deviation in its procedure in such attachment from that particularly directed.

In *Clark vs. Central R. R.*, 45 *Ga.* 486, the defendant was attached by process served upon its agent at its place of business in the manner precsribed for serving legal process upon corporations. The Georgia statute relative to attachments, like the Delaware practice, prescribed that the attachment process upon persons, must be served personally, but makes no provisions for the manner of garnisheeing corporations.

McCoy, J., said:—"The Code provides, that garnishments shall be served personally, and this for a very good reason, It is of great importance to the garnishee that he shall know he is not authorized to settle with the defendant. This he cannot know certainly and speedily by a summons which is not personal. The same reason applies to a corporation. Service on *any* agent may fairly be allowed of ordinary process. It is fair to presume that the agent will very soon notify the chief officer or president. But a garnishment operates *immediately*. Any payment after service is illegal, and it would be grossly unfair to hold the corporation bound to take notice immediately, and act at its peril, on a notice to a mere agent. * * * * * * As we have said, the law requires garnishments to be served personally, and we do not think that section of the *Code*, 3293, which authorizes service in ordinary suits against corporations to be served by leaving copies or by serving any mere agent, applies to garnishments. Personal service against corporations may be effected by serving the president or other officer fulfilling the duties of such officer, as at common law."

In attaching the goods and chattels, rights and credits of a defendant in the hands of another under foreign attachment process, no notice to the defendant or service upon the defendant is provided or intended by any of our statutes. In attaching property or rights and credits by garnishment, the summons is made upon the garnishee in two ways contemplated by the practice and the statute in this respect.

*First*, if the garnishee be a natural person, the summons must be personal, and is made by reading to him the contents of

the writ. Summons upon a personal garnishee is not and never has been made under the statutes providing for service of original process or upon a personal defendant by the alternative methods of personal service or service by copy, as provided in *Sec. 2 of Chap. 102, of the Revised Code.*

The summons made upon a personal garnishee takes effect the instant it is made, upon that instant he is "warned" and if after being thus warned, he do anything in violation of his duty as garnishee, he is liable.

*Second,* if the garnishee be a corporation, the summons upon it must be made in accordance with the direction of the statutes, by summoning the president, treasurer, cashier or paying clerk, and when the summons is so made, its effect is to bind the corporation immediately. Service of process upon the corporation as though it were sued, either at one time in accordance with *Section* 6 *of Chapter* 70 *of the Revised Code* providing service in suits against corporations, or now in accordance with *Section* 48 *of the General Corporation Laws,* providing service of legal process on corporations, is neither directed nor contemplated in garnishments.

It appears therefore to the Court that the statute of the State of Delaware regarding the procedure of attaching stock, did not contemplate the summoning of the corporation, the stock of which is sought to be attached, either as a garnishee under *Chapter* 90 *of Volume* 14 *Laws of Delaware,* or by service under *Section* 6 *of Chapter* 70 *of the Revised Code,* when in force, or under *Section* 48 *of the General Corporation Laws* now in force. It appears to the Court that because of the peculiar character of shares of stock as property, the General Assembly has devised a particular manner of subjecting that property to the satisfaction of the holder's debts, and that this proceeding as shown by *Sections* 13 *to* 17 *of Chapter* 70 *of the Revised Code,* being a special act with respect to a particular procedure, is not repealed or otherwise altered by the general provisions of the *General Corporation Laws* relating generally to service of legal process. It is therefore held, that as a certified copy of the process in this case,

was not left by the sheriff with the president, cashier or treasurer of the corporation, in strict conformity with the provisions of the statute giving the right and providing the method of attaching shares of stock, and as the statute provided no substituted procedure in the event of the non-residence or absence of the officers named, the writ was improperly executed.

*Second:*   The second ground upon which the plaintiff resists the defendant's motion is,

"That the German Union having filed the certificate showing the number of shares of stock held by the defendants waived all technicalities in the service which concerned itself alone."    If this contention be true, it does not alter the right of the defendants to overcome the effect upon their interest of such waiver of technicalities.    The attachment of shares of stock rests wholly on judicial process and its legality depends on the due pursuit of the steps prescribed by the law for its prosecution.    It can borrow no aid from the volunteered acts or waiver of technicalities by the corporation with certain officers of which the copy of process should be left.    Such acts are regarded as void, so far as they interfere with the rights of the defendant or with other third parties.    (*Drake on Attachment Sec* 451 *b*.)    It is therefore held that the plaintiff cannot avail himself of any waiver by the corporation of any technicality in the performance of which the defendants have an interest.

*Third:*   The third point urged by the plaintiff is that "*Section* 16 *of the New Corporation Act* makes shares of stock personal property and as a result shares of stock may be attached under *Section* 4 *of Chap.* 104 *of the Rev. Code* as any other personal property, goods or chattels, rights and credits.    In jurisdictions possessing attachment with language similar to that of ours, it has been held that shares of stock are not included within the phrases "real and personal property," (*Foster vs. Potter*, 37 *Mo.* 525) and "estate real and personal," (*Haley vs. Reed*, 16 *Ga.* 437).

But whether or not shares of stock are given by the General Corporation  Laws a definite status as property, in the case before

the Court it appears that the shares in question were not attached as shares contemplated under *Chapter* 70 *of the Revised Code* and in the manner prescribed by that statute and were not garnisheed as personal property and in the manner prescribed by *Chapter* 90 *Volume* 14 *Laws of Delaware*, and it does not appear that they were attached in a manner prescribed by any statute.

*Fourth:* The fourth contention of the plaintiff is that the defendant may not be heard in this form of motion to object to the quality or method of service, because of the provisions of *Chapter* 532 *of Volume* 16 *Laws of Delaware*, (*Revised Code p.* 786).

This statute by its express terms refers to the investigation of allegations in the affidavit upon which the process is founded, and makes no reference to matters of defective service or of insufficient returns.

The Court is of the opinion that the matter of service goes to the jurisdiction of the Court to hear this case, and hence the question relating to jurisdiction may be brought up, upon special appearance and motion to quash the service and vacate the return.

*Fifth:* In the consideration of the first contention of the plaintiff, the Court has concurred with the plaintiff in his fifth contention, for the reasons there set forth.

The Court is of opinion that the service upon the writ should be quashed and the return vacated.

The rule is made absolute.