ROLAND ALPHEE SPOTURNO, also known as Roland Alphee Coty, Administrator of Francois Coty, Deceased, and CHRISTIANE YVONNE CATHERINE SPOTURNO SEURIN, Administratrix of Francois Coty, Deceased, Defendants Below, Plaintiffs in Error, *v.* JOHN F. WOODS, Plaintiff Below, Defendant in Error.

(*June* 15, 1937.)

WOLCOTT, Chancellor, LAYTON, C. J., RODNEY and SPEAKMAN, J. J., sitting.

*John Biggs, Jr.,* and *Stewart Lynch* for plaintiffs in error; *David F. Brady* and *Kenneth F. Simpson* (of New York), counsel; *Hugh M. Morris* and *George B. Pearson, Amici Curiae.*

*Richards, Layton and Finger* for defendant in error; *Davis, Polk, Wardwell, Gardiner and Reed* (of New York), counsel.

Supreme Court, No. 3, June Term, 1936.

LAYTON, C. J., delivering the opinion of the court:

We agree with the court below with respect to certain of its conclusions.

■ Judgment by default having been entered, and the amount due thereon having been ascertained by inquisition at bar, the subsequent death of the defendant did not operate as a dissolution of the attachment.

■ The amendment of *Section* 95 of the *Corporation Law* (*Rev. Code* 1915, § 2009) accomplished by the first *Section* of *Chapter* 105, *Volume* 33, *Delaware Laws* (*Rev. Code* 1935, § 2124), by including the words, "or any persons' option to acquire such shares, or his right or interest in such shares," is clearly indicative of the legislative intention to subject to attachment all rights and interests, legal and equitable, in shares of stock of Delaware corporations. There is no want of legislative power in this regard; and while the statute is in derogation of the common law, the rule of strict construction should not be stretched to the extent of nullifying the beneficial intent of the statute. See 4 *Am. Jur.* 567.

■ The amendment does not purport to give equitable jurisdiction to the Superior Court in contravention of *Section* 10 of *Article* 4 of the *Constitution,* which provides that the Court of Chancery shall have all the jurisdiction and powers vested by the laws of this State in the Court of Chancery. The statute, as amended, broadens the scope of the writ of attachment by enlarging the classes of property upon which the purely legal remedy of attachment may operate. The Superior Court took jurisdiction by way of foreign attachment, a legal remedy, to enforce a legal demand, and it rendered judgment for an ascertained sum of money.

To this extent we are in agreement with the court below. But the vital question presented by the record was not raised before or considered by that court. Indeed, it is not presented here under any of the assignments of error, nor was it discussed at the initial argument. Upon a consideration of the case after the conclusion of the arguments in this court, a serious doubt arose whether the statute, as applied to the facts of the case, afforded due process of law, and it was upon this point that a reargument was ordered.

The question, then, for decision is whether the statute authorizing attachment of stock, or right or interest therein, as against one who is not registered as the owner thereof on the corporate books, is constitutional under the *First Section* of the *Fourteenth Amendment* of the *Federal Constitution* and the analogous provision found in the *Bill of Rights* of the *Constitution of Delaware* (*Article* 1, § 7), the only notice to the defendant of the pendency of the suit being such as might go to him from the seizure, or constructive seizure of the stock, or right or interest therein, under the writ of attachment.

Conceding but not deciding, that transfer on the corporate books is not a necessary requisite of legal ownership,

a dictum in *Drug, Inc., v. Hunt,* 5 *W. W. Harr.* (35 *Del.*) 339, 168 *A.* 87, although in none of the cases cited there in support of the dictum, or in other decisions of this state, was the precise question at issue or decided. See *Allen v. Stewart,* 7 *Del. Ch.* 287, 44 *A.* 786; *Lippman v. Kehoe Stenograph Co.,* 11 *Del. Ch.* 190, 98 *A.* 943; *Chadwick v. Parkhill Corporation,* 16 *Del. Ch.* 105, 141 *A.* 823; *Mau v. Montana Pacific Oil Co. et al.,* 16 *Del. Ch.* 114, 141 *A.* 828; *Smith v. Universal Service Motors Co.,* 17 *Del. Ch.* 58, 147 *A.* 247; *State et al. v. New York-Mexican Oil Co.,* 2 *W. W. Harr.* (32 *Del.*) 244, 122 *A.* 55; *Bankers' Mortgage Co. v. Sohland,* 3 *W. W. Harr.* (33 *Del.*) 331, 138 *A.* 361; *Haskell v. Middle States Petroleum Corporation,* 5 *W. W. Harr.* (35 *Del.*) 380, 165 *A.* 562; conceding, but not deciding, the correctness of the dictum in *Gibson v. Gillespie et al.,* 3 *W. W. Harr.* (33 *Del.*) 381, 138 *A.* 600, that, where the corporate books disclose stock registered in the name of the attachment defendant, the delivery of the certificate by the company to the sheriff, as required by the statute, is not essential to the validity of the attachment which is accomplished by the service of the process on the corporation in accordance with the statutory direction; conceding the principle that service of process, as required by the statute, is notice to the corporation that stock has been attached where the corporate books disclose registration of shares in the name of the attachment defendant. *Fowler v. Dickson et al.,* 1 *Boyce* 113, 74 *A.* 601; and conceding, in the same circumstances, that, as the statute makes void any assignment or transfer of the stock by the debtor after attachment laid, and that the sale, return and confirmation effect a transfer of the shares, or any right or interest therein, to the purchaser as fully as if the defendant had himself transferred them to him, and that, thereupon, the purchaser becomes entitled to all income or dividends which may have been declared or become payable subsequent to the attachment, that, as the corporation knows where the attachment

defendant may be found, it is required to give him notice of corporate meetings and to pay him dividends as and when declared and made payable, subject of course, to an attachment of his shares, and that, generally, as the relations of a corporation with its registered shareholder are such that a reasonable probability of communication of notice by the corporation to the shareholder obtains where jurisdiction is attempted against him under attachment proceedings, it may be contended forcibly that the seizure, or constructive seizure, of the stock is similar to a manucaption of tangible property, and is constructive notice of the pendency of the suit satisfying the requirements of due process of law, a conclusion reached in *McLaughlin v. Bahre,* 5 *W. W. Harr.* (35 *Del.*) 446, 166 *A.* 800; yet, all of these concessions are not sufficient to satisfy the mind that the essentials of due process of law are afforded where the statutory procedure is undertaken against one who is not registered on the corporate books as the owner of the shares, or the right or interest therein.

▮▮ The phrase, "due process of law," may not be defined with such precision as to point out a clear line of cleavage, applicable to all cases, between proceedings which constitute due process of law and those which do not. Any definition must depend upon the relation which the particular law bears to the fundamental law which limits the legislative power. The basic principle of due process is the securement of the individual from the arbitrary exercise of the powers of government unrestrained by the established principles of private right and distributive justice. *Bank of Columbia v. Okely,* 4 *Wheat.* 235, 4 *L. Ed.* 559; 2 *Cooley Const. Lim. Ch. XI.* Due process of law means law in accordance with fundamental principles of justice, and its essence is notice and an opportunity to be heard before judgment. *Grannis v. Ordean,* 234 *U. S.* 385, 34 *S. Ct.* 779, 58 *L. Ed.* 1363; *Cantor et al. v. Sachs,* 18 *Del. Ch.* 359, 162 *A.* 73.

The nature of the summary procedure of foreign attachment has been fully explained in 2 *Woolley Del. Pr. Ch. XXIV,* in *Lutz v. Roberts Cotton Oil Co.,* 3 *Boyce* (26 *Del.*) 227, 82 *A.* 601, in *McLaughlin v. Bahre, supra,* and in *Cantor v. Sachs, supra.* Its fundamental basis is the exclusive jurisdiction and sovereignty of each state over the property of persons within its borders. Generally speaking, the law assumes that property is always in the possession of its owner, in person or by agent, and the remedy by foreign attachment proceeds upon the theory that its seizure will inform him, not only that it is taken into the custody of the Court, but that he must look to any proceedings authorized by law upon such seizure for its condemnation and sale. *Pennoyer v. Neff,* 95 *U. S.* 714, 24 *L. Ed.* 565. In other words, the presumption is indulged that the property is in the care and management of persons who represent the absentee, and who will communicate to him any proceedings taken against their interest in relation to it. A property owner who absents himself from the territorial jurisdiction of a state, leaving his property within it, must be deemed, *ex necessitate,* to consent that the state may subject such property to judicial process to answer demands made against him in his absence, according to any practicable method that reasonably may be adopted to give him notice of the proceeding to enforce the demand. The due process clause does not impose upon the states a duty to establish ideal systems for the administration of justice with provision against every possible hardship that may befall, *Ownbey v. Morgan,* 256 *U. S.* 94, 41 *S. Ct.* 433, 65 *L. Ed.* 837, 17 *A. L. R.* 873.

Whether, in a suit *in rem* or in the nature of a suit *in rem,* due process of law requires any notice to the owner other than that which is conveyed by the seizure itself, seems, somewhat surprisingly, to be a debatable question. The Chancellor, in *Cantor v. Sachs, supra,* has pointed out

the dearth of definite and pointed answer to the question, and has suggested that this is due to the fact that the statutes generally provide that notice by publication or other form of notice shall supplement the act of seizure; and the Superior Court, in *McLaughlin v. Bahre, supra,* has suggested the desirability, from the standpoint of abstract justice and absolute fairness, of some fair provision for notice other than the implication arising from seizure. The courts, in the cases cited, have observed that there are *dicta* in the decisions of the Supreme Court of the United States to the effect that even in actions *in rem,* some form of notice to the defendant is necessary other than that conveyed by the seizure itself. Mr. Justice Holmes, however, in *Herbert v. Bicknell,* 233 *U. S.* 70, 34 *S. Ct.* 562, 563, 58 *L. Ed.* 854, after quoting the dictum in *Pennoyer v. Neff,* hereinbefore quoted, added that, "it has been said from of old that seizure is notice to the owner"; and the undoubted practice in this State for many years, in suits *in rem,* or in the nature of suits *in rem,* has been to regard seizure as notice, even where the property seized is corporate stock.

Where tangible property is involved, its seizure is reasonably calculated to inform the defendant owner of the attempted exercise of jurisdiction. The system is not ideal for the administration of justice; but it is a system of procedural justice customarily employed long before the Revolution in the commercial metropolis of England, and it was generally adopted by the States as suited to their circumstances and needs. The procedure cannot be deemed to be inconsistent with due process of law. *Ownbey v. Morgan, supra.*

At common law, stock of a corporation, being intangible property, could not be levied upon or attached, *Fowler v. Dickson, supra.* It became necessary, in the interests of remedial justice, for the Legislature to abate this manifest evil. Prior to the enactment of the present

statute, it was provided that only shares of any person in any incorporated company with all the rights thereto belonging, could be attached for debts or demands. *Rev. Code* 1915, § 2009. The statute provided no method of procedure; accordingly, the procedure employed in attaching tangible property was followed. The writ of attachment issues from the office of the Prothonotary, and a certified copy of the process is obtained. Under the instruction of the plaintiff, the sheriff lays the attachment by serving the writ upon certain officers of the company, a director, or its resident agent, and by leaving with such officer, director or agent a certified copy of the process. The duty is imposed upon the officer, director or agent to give to the sheriff a certificate as required by *Section* 2125, *Sec.* 93, *Rev. Code* 1935. The statute provides for no notice by publication, mail or otherwise.

In *McLaughlin v. Bahre, supra,* it appears that certain shares of stock were attached as belonging to the defendant, a portion of which stood in his name on the corporate books. The Superior Court held, as has been said, that the statutory procedure did not ignore the essentials of due process of law by failing to make provision for notice to the defendant other than that arising by implication from the constructive seizure of the shares. With respect to shares registered on the corporate books in the name of the defendant, the court but followed the practice of years, and we have adverted to the force of the argument which might be made to sustain the conclusion. The Chancellor, in *Cantor et al. v. Sachs, supra,* found it unnecessary to hinge the decision of the question of notice upon the fact of seizure alone, as there, the statute made provision for notice by publication, and by mailing of notice where practicable.

Where, however, the shares, or the right or interest in them, are not registered on the corporate books in the name

of the defendant in the writ, as here, the reasonable probability of communication of notice pales.

Notice arising from seizure rests upon the presumption that, from human experience, the defendant in the proceedings will be informed of the pendency of the action against him. Fiction has its part in the theory, but the principles of natural justice require that fiction be not allowed to "deny the fair play that can be secured only by a pretty close adhesion to fact." *McDonald v. Mabee,* 243 *U. S.* 90, 37 *S. Ct.* 343, 61 *L. Ed.* 608, *L. R. A.* 1917 *F*, 458. Due process of law, as applied to notice of proceedings under a statute resulting in judgment, means notice directed by the statute itself, and not a voluntary or gratuitous notice resting in favor or discretion; and the statutory provisions must not leave open clear opportunities for a commission of fraud or injustice, and must be such as to indicate that, if complied with, there is a reasonable probability, the defendant will receive actual notice. *Cantor et al. v. Sachs, supra; Wuchter v. Pizzutti,* 276 *U. S.* 13, 24, 48 *S. Ct.* 259, 262, 72 *L. Ed.* 446, 447, 57 *A. L. R.* 1230; *Roller v. Holly,* 176 *U. S.* 398, 20 *S. Ct.* 410, 44 *L. Ed.* 520.

The statute makes no positive provision for notice to the defendant, and the essential of due process must be found, if at all, from the circumstances of relationship which, it is argued, render it reasonably probable that the corporation into whose hands the writ goes will inform the defendant of the pendency of the suit.

The picture presented by the record is this: Woods, the plaintiff, a creditor of Coty, the defendant, by an *ex parte* affidavit not required by the statute, informs the sheriff that Coty has the right to claim certain shares of the capital stock of Coty, Inc., from Lee & Co. and Hurley & Co., and directs him to seize those rights by laying an attachment in the hands of Coty, Inc. The corporation certifies that its books show that the defendant in the writ owns none of its

stock; that he owns no rights or interests in any of its stock; and that he has no option to purchase any of its stock. The sheriff returns that he has seized the shares of stock standing in the names of the alleged nominees.

The corporation knew nothing of the defendant, either as the owner of its stock or of any right or interest therein. Its certificate shows that Coty was a stranger in law to it. Its books told it nothing. It had no official information about him, his residence or whereabouts. As Coty, the defendant in the writ, was a stranger in law to the corporation, his so-called nominees were strangers to the process; and, as a voluntary or gratuitous notice, rendered at discretion or through favor, would amount to nothing even if the corporation knew where to inform Coty of what was afoot, and as jurisdiction was not attempted against the nominees, it seems clear enough that whatever notice the corporation might see fit to give the nominees would be, substantially, voluntarily and gratuitously given; for reasonable probability of communication of notice, based upon the relationship of the parties, is no stronger than the tie which may be supposed to bind them. Here, there was no tie at all between the defendant and the corporation so far as its books disclosed, and nothing was known of the relationship between the defendant and his alleged nominees except as alleged by the plaintiff. To sustain the theory of the plaintiff, it must be supposed that the corporation will accept as true the relationship as disclosed by him despite its not impartial source, and will, consequently, inform its registered shareholders of an attempted jurisdiction against one who is a stranger to it. The result is making an attempt at an attachment of the rights of the alleged nominees serve the purpose of attaching the supposed rights of Coty against them. The seizure is not claimed by the plaintiff to be of Coty's shares of stock, but of his rights or interests in them. They are said to be equitable rights, but in their

practical assertion they are no more than rights to causes of action. If the proceedings have an analogue, it is in garnishment process, although, as said in *Fowler v. Dickson et al., supra,* they do not come within the comprehension of the garnishment statutes. The persons who hold the stock and against whom, therefore, the defendant's rights are assertable, are not those against whom jurisdiction is attempted, are not in reach of the Court's process here, and cannot be subjected to it except as principal defendants. Those persons are analogous to garnishees, but the argument that summons of a garnishee will work as notice to the defendant cannot by analogy apply, for the reason that the so-called garnishees have not been summoned to appear.

The argument of the defendant in error is that the attachment was laid according to the prescribed statutory method, a method which the nature of the property naturally suggests; the fact that the true owner of the stock may be unknown to the corporation is a condition which the defendant created, and of which he cannot be heard to complain; that, if the defendant saw fit to remove himself from the recorded ownership of the stock by having the legal title held for him by a nominee, he created, and, therefore, voluntarily and necessarily assumed, the risk of lessening the probability of being informed of any act affecting his property. This argument ignores the fundamentals of due process of law, notice in actuality, or the adoption of means from which notice is reasonably probable. It begs the question. The real owner of shares of stock in a Delaware corporation may permit them to be registered on the corporate books in the name of another. The certificates representing the shares may have passed from the real owner to the registered owner through one or more hands, as is said in the argument to be the case here; but the situation thus created is not *prima facie* illegal or immoral, and certainly it affords no reason to ignore the essentials of due process

of law if jurisdiction is attempted against the real owner in an effort to subject his right in the shares to liability for debt or demand.

The defendant in error admits that it is less probable that the real owner will receive notice in such case than where he causes himself to be registered as the owner on the books of the corporation, and that the probability grows less as the number of persons standing between him and the registered owner increases; but, he says, the difference is one of degree. That is the very difficulty. The difference is one of degree; such a difference in degree that reasonable probability of notice sinks to the level of mere chance; for, first, it must be assumed that the corporation, which has no official knowledge of the defendant in the writ, will trouble itself to notify its registered shareholder who is a stranger to the writ, and if, perchance, such notice is given, then it must be assumed that the registered shareholder will not suppose that the real owner will receive notice through some official source, will not be indifferent or hostile, but will likewise trouble himself to forward the notice. The presumption of notice arising from seizure is, at best, far from constituting a perfect substitute for actual notice, and when presumption is piled on presumption, a reasonable probability of actual notice disappears. In the one case, where the books of the corporation show an ownership of, or right or interest in shares, on the part of the defendant in the writ, the probability that he will receive actual notice of the attempted jurisdiction is, at least, reasonably arguable; in the other case, the probability is remote and, therefore, unreasonable in fact, having in mind the caution, expressed in *McDonald v. Mabee, supra,* with respect to the fictional character of notice arising from mere seizure, and the further caution in *Wuchter v. Pizzutti, supra,* with respect to provisions of law for service of process that leave open clear opportunities for fraud or injustice.

■ All mesne process in the form of attachment of tangibles and garnishment of intangible credits is capable of great abuse resulting in injustice where, as under our law, no notice is provided for other than that of seizure in the case of attachments and summons in the case of garnishments. The same may be said with respect to the attachment of stock, or rights or interests therein, of those whose names appear on the corporate books as being the owners. To uphold the statute as constituting due process of law as applied to the species of property attached here, and in the circumstances existing, would mark it as one standing conspicuously apart in the field of execution as harsh, oppressive and dangerous in its operation. As applied to the facts of the case, it ignored those safeguards of notice to the defendant which are designed to afford a reasonable opportunity to appear and defend before judgment, and, therefore, due process of law was denied.

The judgment is reversed, and the cause is remanded to the Superior Court with the direction to quash the writ of *scire facias*.