104 A.2d 257 (1954)
GAMBLE
v.
PENN VALLEY CRUDE OIL CORP.
Court of Chancery of Delaware, New Castle.
April 9, 1954.
*258 David F. Anderson (of Berl, Potter & Anderson), Wilmington, and Clarence E. Hall, Philadelphia, Pa., for plaintiff.
William H. Foulk and William Duffy, Jr., Wilmington, for defendant.
SEITZ, Chancellor.
This is an action by an individual against a dissolved corporation seeking a declaratory judgment that he is entitled to have certain shares of stock issued to him on the payment of a certain sum as provided for in a stock option agreement purportedly exercised by him after dissolution. He seeks, in the alternative, a determination that upon the payment of the option price, he is entitled to receive from the corporation or its liquidating agent an amount equivalent to the sum which he would receive were he the owner of the shares subject to the option.
The matter comes on for decision on cross-motions for summary judgment and the parties state that the material facts are not in dispute, a matter to which I shall later advert.
The defendant corporation was formed about January 22, 1935, with a capitalization of 200,000 shares of $6 par Class A stock and 400,000 shares of 1¢ par Class B stock. It was created to develop oil properties and it engaged in such business.
To compensate for the promotional effort and expense there was issued to one Baxter an option to purchase up to 200,000 shares of the Class B stock at 1¢ per share. It is *259 stipulated that the option was validly issued for good and sufficient consideration. Plaintiff and others were associated with Baxter in the successful formation of the corporation. It is also agreed that plaintiff was closely associated with it for several years after its formation and devoted a large part of his time in the furtherance of its business for which he received no compensation. Plaintiff's affidavit says that he advanced $2,000 in cash in partial consideration for the option. It was agreed that if the formation of the corporation was successfully completed, Baxter would give 25% of his Class B option to plaintiff. About May 22, 1935, the plaintiff became by assignment from Baxter the holder of this option to the extent of 50,000 shares. Subsequently he disposed of his option to certain of his shares so that the present issue is concerned with the option to the extent of 25,981 shares.
Plaintiff's affidavit recites that although he was only to advance $2,000, he found it necessary to devote more and more time and to contribute more money to the corporation. Plaintiff says that he paid about $3,500 additionally for corporate expenses for which he did not receive reimbursement. Plaintiff says in his affidavit that he suggested the purchase of the property which now renders the liquidation successful. Plaintiff concludes by stating that the aggregate value of the time spent and money advanced comes to at least $20,500.
Defendant's affidavit says that the plaintiff could have been reimbursed by the corporation for the money advances had he made demand. The affidavit also says it believes plaintiff was compensated by the brokerage house which sold defendant's stocks for the major portion of the time spent in forming the defendant corporation. Defendant's affidavit concludes by saying that while it believes that plaintiff spent considerable time and effort in the promotion of the corporation without compensation, others including Baxter, who also received options, spent an equal or greater amount of time and effort therein without compensation.
In February 1937, the plaintiff offered to exercise his option but because the issuance of such stock was still restricted by the registration statements, the defendant declined to issue the shares at that time. Plaintiff made no other attempt to exercise it until after dissolution. Nor did the corporation ever request plaintiff to exercise his option.
By June 30, 1939, all options other than that held by plaintiff for 25,981 shares had been exercised and stock issued therefor. From June 30, 1939 until its dissolution the corporation's annual statements and balance sheets contained a notation that the Class B stock was subject to an option in the amount of 25,981 shares. No demand was ever made on the plaintiff to exercise his option, and the corporation admits that it has not been adversely affected or prejudiced by the nonexercise of the option. It is not clear as to the terms and conditions under which the nonoption B stock was issued.
In November 1952, the directors of the defendant corporation decided to dissolve and the stockholders voted such dissolution on December 19, 1952. In connection with the dissolution, notice was sent to the stock-holders, including plaintiff, which expressly stated that in addition to the number of shares outstanding there were "irrevocable options outstanding for the purchase of 25,981 shares of Class B stock". The accompanying balance sheet contained a similar notation.
Promptly after the dissolution became effective on February 19, 1953, plaintiff presented his option to the defendant, tendered the option price and requested the issuance of the stock. For the first time defendant refused to honor the option or to issue the shares covered by the option. After some delay this action was commenced.
As indicated, plaintiff seeks either the issuance of the shares to him or the payment in liquidation of an amount equivalent to that which he would have received were he the owner of the shares subject to the option.
*260 Defendant's argument against plaintiff's claim appears to be two-fold: First, it says that the option gave the plaintiff a right to the shares only if he elected to exercise it within a reasonable time and that this reasonable time expired before the dissolution date without the option being exercised. Since this was not done defendant concludes there was no contractual liability on the defendant at the date of dissolution. Second, and in any event, defendant contends that the option will not now be enforced either directly or indirectly because it would produce an unconscionable result.
At the oral argument this court questioned its jurisdiction over the subject matter of this action and now has the benefit of counsels' views thereon. Both counsel argue vigorously that this court has jurisdiction for several reasons.
We are here dealing with a solvent corporation which voluntarily dissolved at a time when there was outstanding what I shall here assume was a valid option agreement. Under the option contract the corporation was committed to keep the offer open. See Gottlieb v. Heyden Chemical Corporation, Del., 92 A.2d 594. But plaintiff was under no obligation to buy any shares from the corporation and so his status, at least prior to dissolution, was not comparable to that of a subscriber to corporate shares. Thus, plaintiff was not an equitable shareholder. 12 Fletcher, Cyc. of Corps. (Perm.Ed.) § 5613. Compare Warner & Swasey Co. v. Rusterholz, D.C., 41 F.Supp. 498. The language of the Superior Court in Woods v. Spoturno, 7 W.W.Harr. 295, 183 A. 319, reversed 8 W.W.Harr. 378, 192 A. 689, is not necessarily inconsistent with my conclusion. Assuming that the act of voluntary dissolution in this case did not leave plaintiff without any rights, it becomes vitally important to consider the effect of such dissolution on plaintiff's contract rights.
Since the power of trustees in dissolution stems solely from our statute defining the rights and liabilities of a dissolved corporation, 8 Del.C. § 278, it is important to consider the effect of that statute. Under that statute as construed by our Supreme Court a dissolved Delaware corporation has the power to close its affairs but not to carry on the business for which it was established. McBride v. Murphy, 14 Del.Ch. 242, 124 A. 798; compare Addy v. Short, Del., 89 A.2d 136. I do not believe, at least in the present case, that this restricted power includes the right to issue additional capital stock. Generally speaking the acquisition of additional capital would seem to be the very antithesis of winding up. Indeed, the transferable character of stocks is destroyed by dissolution with some equitable limitations. 16 Fletcher Cyc. of Corps. (Perm.Ed.) § 8131. Assuming that a situation might possibly arise when the issuance of additional shares by a dissolved corporation would be in furtherance of dissolution, I do not believe such a showing is here made.
The defendant corporation has thus, if anything, breached its contract by voluntarily placing itself in a position where it is now legally powerless to issue shares to honor its assumed valid agreement to make the plaintiff a shareholder on the terms provided. Compare Okmulgee Window Glass Co. v. Frink, 10 Cir., 260 F. 159.
We therefore reach a stage where we have a breach by the defendant corporation of its assumed valid option contract in a situation where plaintiff cannot get his stock solely because of the dissolution. Ordinarily such a plaintiff's remedy would be an action in the Superior Court for damages for breach of contract. Both parties say that such remedy is here inadequate because an attempt by a jury to fix money damages would be fair neither to the plaintiff nor the defendant and the other stockholders. They say this is so because the plaintiff's claim, basically, is for the value of the shares in dissolution. The ascertainment of such value is dependent upon the prior deduction of such value factors as dissolution charges, undetermined tax liability and other obligations of the corporation. At least some of these *261 will probably not be known exactly at the time a jury would be called upon to determine the amount of plaintiff's damages. In another way, it may be said that a jury's determination of value may and probably would here be sufficiently speculative to render the legal remedy inadequate in the peculiar circumstances of this case.
Assuming once again the validity of the option, the plaintiff's right to get the optioned shares by specific performance would have been clear had there been no dissolution. Since the legal remedy may be inadequate and in view of defendant's assumed breach of contract, I conclude that equity has jurisdiction to grant the alternative relief requested by plaintiff, viz., an amount equivalent to the sum he would receive were he the owner of the shares less the option price. This may be considered specific performance with the relief being the monetary alternative. Compare 4 Pomeroy Eq.Jur. (5th Ed.) § 1403, § 1405b; and see Grone v. Economic Life Insurance Co., Del.Ch., 80 A. 809.
I now consider whether the option was valid at the dissolution date. Plaintiff says the option by its terms was unlimited as to the time when it could be exercised. Defendant says that no time is fixed for its exercise and therefore the law will imply that it has to be exercised within a reasonable time. The short answer is found in the language of the option which reads:
"Penn Valley Crude Oil Corporation gives and grants to C. A. Baxter, and his assigns, the exclusive right or option to subscribe for, and purchase from it, in such amounts and at such times as he may desire * * *."
The quoted language makes it clear to me that under its terms it is unlimited in duration[1] and so the rule of law implying a reasonable time in the absence of a time provision has no application. Also it may be noted that the Delaware statute explicitly authorizes options whose terms may be "unlimited in duration". 8 Del.C. § 157. Defendant suggests that the statutory provision must be construed to have an implied limitation in the form of a reasonable time. I cannot so construe the language of the statute and although the scope of the grant of power may seem undesirable I believe that matter is for the legislature.
It follows that the plaintiff's inaction with respect to the option prior to the date of dissolution did not invalidate it.
Defendant next contends that the court should not enforce the option even indirectly because to do so would bring about an unconscionable result.
Defendant's argument is based upon the dictum found in the Per Curiam opinion of the Supreme Court of Delaware in Kingston v. Home Life Insurance Co., 11 Del.Ch. 428, 104 A. 25, affirming the Chancellor, 11 Del.Ch. 258, 101 A. 898. The option there involved was unlimited in time and was exercisable at the $10 par. The optionee was given the right to take at par $100,000 worth of shares of the company out of $250,000 worth authorized of which $100,000 worth was then issued and outstanding. About ten years intervened between the granting of the option originally and the court's decision (1906-1916). The optionee exercised some of the options and sold such stock at from two to three times the par value. In 1909 the option was enlarged to cover any shares beyond the authorized amount in the event additional shares were authorized. This received stockholder ratification.
The Supreme Court in the Kingston case said that while the stock option might not have been invalid when entered into:
"* * * yet if it now appears to work inequitably to the minority stock-holders it should be terminated. The evidence, within the findings of the Chancellor, seems to disclose a situation with respect to the stock option which, if continued, might operate prejudicially to the minority stockholders of the Insurance Company; for it appears that the present value of the stock of the Insurance Company is very considerably in excess of the par *262 value. If this be so, it would be the duty of the court to consider in a proper case whether it is sufficient to render the stock option at this time inequitable, and whether the Protective Company, after so long a lapse of time in which to exercise its option, and before the stock had increased so much in value, has any claim in equity for the continuance of the option."
The Court suggested that the questions could be raised in a stockholders' action. However, plaintiff does not suggest that the corporation may not properly raise the point here.
The applicability of the Kingston dictum in a proper case was recognized by the U. S. District Court for Delaware in Wyles v. Campbell, 1948, 77 F.Supp. 343, although under the facts there presented it was not applied to strike down the option. The option was so clearly without the purview of the dictum in the Kingston case, as Judge Rodney there points out, that further comment is unnecessary except to say that many of the distinguishing features mentioned in the Wyles case do not exist here.
Preliminarily it should be noted that the court in the Kingston case refused to upset the option as violating the rule against perpetuities. After the Kingston case was decided, 1918, a statute was passed specifically authorizing options of unlimited duration. 36 Laws of Del. 377, now found in 8 Del.C. § 157. The statute did not affect the quoted limitation announced in the dictum in the Kingston case. I say this because the statute deals with the legality of options unlimited in time while the considered dictum in the Kingston case apparently deals with an inequitable situation created by subsequent events. It may also be noted that the federal court in the Wyles case recognized as recently as 1948 the vitality of the Kingston principle.
An examination of the cases mentioned and the law generally lead to the conclusion that the court must analyze the facts and consider whether in the light of the whole picture it would now be unconscionable to permit the exercise of the option. In other words the court in the Kingston case seems to suggest that, despite the unlimited time of the option, lapse of substantial time before a great increase in value renders the option unenforceable thereafter. The reason given is that its enforcement would be "inequitable". This is more of a conclusion than a reason.
Certainly one cannot say that mere lapse of a so-called reasonable time plus subsequent sharp increase in value is sufficient to strike down an option even though the Kingston case might be so construed. I say this because, without more, such a conclusion would now seem to run afoul of the statute permitting options without term and obviously such options are nearly always granted with the expectation that they will only be exercised when the shares covered thereby have increased in value.
I confess that I have great difficulty in formulating standards by which facts are to be evaluated for the purpose of applying the Kingston dictum. However, it must be honored by this court. In considering this defense, I believe the court is entitled to look at the facts generally, including the value received by the corporation for the option, explanations for the lapse of time, and the date of and the reason for the increase in value. Other facts may also be developed which would exclude any finding that it is now inequitable to recognize the option.
Let us see what the facts show here, The options on all the B stock originally subject to the 1¢ per share option were exercised by everyone except plaintiff prior to June 1939. Considering plaintiff as a B stockholder, it appears that he will receive about $1.50 per share in liquidation or, says defendant, about $39,000 for $259.81.
The record shows that plaintiff could have exercised his option at any time since October 1, 1937. It does not show when and how the stocks came to increase so much in value. Certainly this is material. The affidavits seem to show a disagreement as to the value of the services rendered *263 for the option. In fact, since plaintiff is an assignee it may be that all the services rendered will need to be evaluated in order to allocate the proper percentage thereof to plaintiff's shares. Certainly this consideration is material.
I conclude that defendant has the burden as to this defense but I also conclude that the court is unable, on this record, to dispose of defendant's defense that it is now inequitable to enforce the option. Vital facts are either lacking or in conflict and it would therefore be inappropriate to attempt either to assume them or to evaluate them on cross-motions for summary judgment. It follows that for the reasons given the motions for summary judgment must be denied.
Order on notice.
NOTES
[1] It is of course presumably limited to the lifetime of the optionee and his assigns, but that is also in a sense unlimited.