JACOB BLAUSTEIN v. STANDARD OIL COMPANY, a Corporation of the State of Indiana.

*(October* 30, 1945.)

RODNEY and SPEAKMAN, J. J., sitting.

*Caleb S. Layton, C. A. Southerland* and *Aaron Finger* for plaintiff.

*Hugh M. Morris* and *Edwin D. Steel, Jr.,* for defendant.

Superior Court for New Castle County, Foreign attachment-covenant, No. 136, May Term, 1945.

RODNEY, J., delivering the opinion of the Court:

This case calls for a consideration of the subject of foreign attachment as it exists in the State of Delaware, with particular. reference to its application to foreign corporations not doing business in this State. The precise question we must determine is the nature or character of the underlying indebtedness of the defendant justifying the issuance of the writ in an action ex contractu, in view of the language of the pertinent statutes of the State.

Certain principles concerning attachments in Delaware seem firmly settled. It is quite clear that the subject had its origin in the custom of London. *Reynolds v. Howell,* 1 *Marv.* (15 *Del.*) 52, 31 *A.* 875; *McLaughlin v. Bahre,* 5 *W. W. Harr.* (35 *Del.*) 446, 166 *A.* 800; *Woolley, on Delaware Practice, Sec.* 1240.

Indeed, an old Act passed when what is now the State of Delaware still had legislative union with the Province of Pennsylvania, speaks of the writs issued "pursuant to anie Customs of cities or corporations in England ⁕ ⁕ ⁕."

It is equally clear that the whole subject of attachments runs counter to the ordinary course of the common law, and was exclusively created by statutory enactment. Partly for this reason the statutes have uniformly required and received a strict construction. *Fowler v. Dickson,* 1 *Boyce* 113, 74 *A.* 601; *Reynolds v. Howell,* 1 *Marv.* 52, 31 *A.* 875.

Because the subject of attachment is the creature of legislative enactment, so cases in other jurisdictions on the subject must be evaluated with a clear knowledge of the theory and statutory provisions of that jurisdiction where the question arose.

It would be of little compensating value to trace the statutory history of the subject of attachments in this State. The first statute of which we have knowledge, passed after Delaware achieved complete and separate legislative jurisdiction, was adopted in 1734. This Act seems not to have included the subject of attachment as applicable to non-residents, and this was supplied in 1740. These Acts are found in the first compilation of Delaware Laws, of 1741 at pages 128 and 184. These Acts seem not to have met the desired result and were repealed insofar as applicable to attachments of over 40 shillings, by the Act of 1752, found in the 1752 compilation of *Delaware Laws* at page 314. This Act was in turn repealed by the Act of March 24, 1770, to be found in the currently available Vol. I, *Laws of Delaware,* page 460.

In all of the Acts, above mentioned, prior to 1770 it was required before a writ of attachment should issue that an oath or affirmation be made by or on behalf of the plaintiff that the defendant was "justly indebted" to the plaintiff in a sum "upwards" or "or more" than 40 shillings. In the Act of 1770 there first appeared the provision that process of attachment could issue upon two returns of "non est" as applied to a resident, and one return of "non est" as applied to a non-resident, "and such proof made of the cause of action as the court shall think fit." Where recourse was not had to such other process and the returns of "non est," the requirement of the affidavit that the defendant was "justly indebted" in the specified sum was continued. Insofar as attachments against non-residents was concerned, it was required by all of the above Acts that the affidavit should state that such non-resident "avoids coming into this government to answer his or her just debts, as it is believed" and this provision was strictly construed. *Evans v. Hudson,* 1 *Del. Cas.* (*Boorstin*) 198. By the Act of Jan. 27, 1823,

Vol. 6, *Laws of Delaware*, p. 261, the requirement that the oath include the statement that the non-resident "avoids" the State of Delaware, was removed, and the mere averment that the defendant is a non-resident and is "justly indebted" became sufficient as we have it today.

The similarity of the procedure anciently existing in the two remedies of arrest by capias and proceeding by attachment is too marked to escape some notice. Both were proceedings to compel the appearance of the defendant; both were actions which were required to be preceded by an affidavit of the existence of an indebtedness of a jurisdictional sum, and the special bail taken in each case had direct reference to the indebtedness actually charged in the affidavit. The bail to the action given in a capias case allowing the defendant's release and defense to the action was not dissimilar to the special bail required for the dissolution of the attachment. The proceeding and practice whereby in a capias case the plaintiff under a rule to show cause of bail was compelled by affidavit, or otherwise, to justify the capias or release the defendant under common bail, bore a direct resemblance to the proceeding originating in the attachment Act of 1770, allowing the issuance of the attachment upon returns of "non est inventus" and "such proofs made of the cause of action as the court shall think fit." Both were clearly for the purpose of compelling justification for unusual process.

Leaving the general subject of attachments and confining our attention to the matter of foreign attachments, we may immediately pass to this question as applied to foreign corporations. In *Vogle v. New Granada Canal & Steam Nav. Co.*, 1 *Houst.* (6 *Del.*) 294, it was determined in 1856 that the process of foreign attachment in Delaware applied only to individuals, and did not apply to a foreign corporation. The Court commented on the anomalous relationship

of a foreign corporation to the matter of special bail as an element of appearance.

The conclusion reached in the Vogle case was responsible for the Act of Mar. 2, 1857, Chap. 426, Vol. II, *Laws of Delaware,* but incorrectly numbered 424. This Act, insofar as is here pertinent, is in the exact terms of *Sec.* 4631, *Revised Code* of 1935, the statute here involved. The extension of the process of foreign attachment to foreign corporations provided by this Act, brought into being certain provisions entirely different from the formerly existing general provisions of foreign attachments as applicable to individuals. No alternative method of procedure upon return of "non est inventus" was provided for in the later Act as to foreign corporations, and in the affidavit required as a preliminary step it was also required that the affidavit show that the defendant "is justly indebted to the said plaintiff in a sum of money, *to be specified in said affidavit,* and which shall exceed fifty dollars."

This then is the pivotal statute upon which our attention must be focused. We are not concerned with any other statute applying to causes of action ex delicto in nature, but solely with the present statute concerning actions ex contractu. Because the proceeding by attachment was not a common-law remedy, the words of *Smith v. Armour & Co.,* 1 *Penn.* (17 *Del.*) 361, 40 *A.* 720, 721, are appropriate: "It [foreign attachment] is purely the creature of the statute, and has been quite uniformly viewed as a violent proceeding, by which the property of the defendant is taken and seized upon before the claim is judicially determined by a competent court of law; and has, therefore, been uniformly strictly construed."

We are of the opinion, then, that the remedy of foreign attachment against a foreign corporation in an action ex contractu must be authorized by the statute herein men-

tioned or some other legislative Act, and the court may not extend the process of attachment by judicial construction. Attention has been drawn to the extension from time to time of the process of attachment. Such extension, when made, has been the result of legislative rather than judicial action.

We propose, then, to briefly consider (a) the nature of the indebtedness contemplated by the provisions of *Sec. 4631, Revised Code* of 1935, and required to be set out in the affidavit to be filed as the preliminary step of such process; (b) the enlarging effect, if any, on Sec. 4631 brought about by other statutory provisions relating to foreign attachment, and (c) the nature of the indebtedness relied upon in the present case.

(a) Under the precise terms of Sec. 4631, the writ of attachment shall only issue when the plaintiff, or someone for him, may properly make affidavit—

1. That the defendant is justly indebted to the plaintiff.

2. That the indebtedness is a sum of money which shall exceed $50, and the amount of the indebtedness must be specified in the affidavit.

It is clear that the claim of the plaintiff must relate to an indebtedness of the defendant to the plaintiff. Upon this basis the court, in *Smith v. Armour & Co., supra,* held that without special statutory provision the writ of foreign attachment could not issue in an action sounding in tort; that decision led to specific legislation covering ex delicto actions, with which we are not here concerned.

Not only must the indebtedness exist as in an action ex contractu, but it must exceed $50, and the amount must be specified in the affidavit.

To us it seems that no one, in order to avail himself of a violent and unusual process, can properly swear to an indebtedness and specify the amount of such indebtedness, unless such indebtedness is either liquidated in character or capable of being made certain by some fixed or available formula. One cannot specify what one cannot ascertain. We think, then, the damages must either be liquidated in character, be ascertainable from the contract itself, or be able to be specified by some definite formula which the law itself supplies to meet a given case.

We do not say that the indebtedness can only be shown for a fixed or liquidated sum as in an action of debt. We do not say that foreign attachment proceedings in ex contractu actions cannot be maintained where the damages are unliquidated, but where either the damages are ascertainable from the contract itself, or by a formula as fixed and recognized as if specifically provided. While no adjudicated case in Delaware is disclosed to us, there have been cases such as *Love v. Barnesville Mfg. Co.,* No. 17, Jan. Term, 1902, New Castle County, 3 Penn. (19 *Del.*) 152, 50 *A.* 536, where the question was not raised, but which were cases of foreign attachment against a foreign corporation.

In *Fisher v. Consequa,* (1809) 9 *Fed. Cas.* page 120, No. 4,816, it was held that under the Pennsylvania Act, not entirely dissimilar from our own, an indebtedness, unliquidated in character, but growing out of an implied promise to pay, could be the subject of attachment proceedings. In *Clark v. Wilson,* (1819) 5 *Fed. Cas.* page 936, No. 2,841, the same Justice (Bushrod Washington) held that an unliquidated claim represented rather by a general claim for damages than an implied promise to pay, could not be the subject of attachment proceedings. Cases in other jurisdictions have indicated that attachment proceedings may be predicated upon an implied promise to pay, even though the dam-

ages are unliquidated. *Roelofson v. Hatch, 3 Mich.* 277; *Fisher v. Consequa, supra.*

It is not necessary or proper for us in this case to attempt to determine the precise nature of the indebtedness or claim which can be enforced in any case by attachment proceedings where the damages are unliquidated. The only question for us to determine is whether the claim of the plaintiff can be so enforced. At this point we are not determining the nature of the plaintiff's claim. That question is reserved for further consideration.

(b) The plaintiff strenuously contends that the meaning of Sec. 4631, and the extent to which foreign attachment is available against a foreign corporation must be determined and is enlarged from a consideration of other statutes relating to attachment. For this purpose our attention is expressly called to Sections 4588, 2124, 4607, and incidentally to Sections 4610 and 4632. These statutes will be briefly considered in their order.

Sec. 4588 concerns "Commencement of Actions" and merely provides "actions may be begun by attachment as provided in Chapter 126." Chapter 126 directly concerns attachments, and its meaning and extent is in no way affected by Sec. 4588.

Sec. 2124 in its material portion is a very old statute, being first enacted February 10, 1829. It simply provides, as it always has provided, that shares of stock "may be attached for debt, or other demands." When this statute was passed the process of foreign attachment was pursued under the Act of 1770, as above outlined. No process then included proceedings against foreign corporations. The purpose of Sec. 2124, when enacted, and since, has been not to indicate or set out the method of procedure by attachment or foreign attachment, but to subject corporate stock to at-

tachment where, without such statute, and from the peculiar nature of corporate stock, it would not have been liable to such process. The statute has no particular reference to mesne attachments, but to execution attachments as well, and simply makes corporate stock available under the process, if the provisions of the attachment law are complied with and valid proceedings by attachment are maintained.

Sec. 4607 provides that the Court, upon petition "shall investigate the allegations contained in any affidavit * * * to be made and filed before the issuing of such [attachment] process except such allegations as relate to the indebtedness of the defendants to the plaintiff."

The statute had its origin in Chapter 532, Vol. 16, *Laws of Delaware,* passed March 15, 1881. On the same day three Acts were passed, being Chapters 530, 531 and 532 of Vol. 16. Each statute gave to the Court the authority, and, on petition, the duty of investigating the allegations of affidavits filed as a prerequisite for certain process. These were respectively the questions of arrest on capias in civil actions, arrests in civil actions for debts not due, and attachments of property under mesne process. In each the power of the Court in this supervisory investigation was confined to the allegations which concerned the propriety or availability of the process and not of the existence of the indebtedness, and did not give to the Court the jurisdiction to take the place of a jury to try the merits of the indebtedness. The statute does not enlarge or control the process of attachment, but merely gives an early opportunity of having the process itself confined within its proper limits.

Neither Sections 4610 nor 4632 have any direct bearing upon the present question. Sec. 4610 is merely procedural in character where the writ of attachment is otherwise valid,

and 4632 is a special and specific statute governing only actions ex delicto in character.

We think the right to process of foreign attachment against a foreign corporation in a claim arising ex contractu must be found under the provisions of 4631 of the *Revised Code* of 1935, and that the other cited statutes do not enlarge the scope of Sec. 4631. If this scope is to be enlarged, it is the function of the legislature, and not of the courts, in view of our clear judicial and legislative history.

(c) We now come to the nature of the claim of the plaintiff. The suit is brought by a stockholder of Pan American Petroleum and Transport Company against the defendant, a foreign corporation allegedly in control of such Pan American Company. The damages sought are based upon the alleged damages sustained by the Pan American Company, and the damage suffered by the plaintiff is claimed to be such proportion of the total damage as is represented by the proportion his stock bears to the total stock of the Pan American Company. Whether the plaintiff, as an individual and in an action at law, has a cause of action against the defendant, it is not for us now to say. We are only to determine whether the alleged claim is such as may be the subject of foreign attachment proceedings under our statute. We are of the opinion that it is not.

The first count of the declaration alleges that by contract the defendant bound itself to cause Pan American to secure sufficient crude oil reserve and to maintain a backlog of crude oil properties sufficient for its operation; that defendant failed to require Pan American to secure such backlog of crude oil properties, but on the contrary bought such properties itself, and sold such oil to Pan American, knowing that Pan American requirements were 40,000 barrels of crude oil per day. The declaration then alleges that the value of the oil sold to Pan American, together with

the value of the crude oil production remaining in the possession of the defendant, and after deducting the defendant's cost thereof, amounted to $255,259,800.62; the declaration then avers that as he owns 2.956% of the stock of Pan American, so he is injured, and has sustained damages to the extent of $7,546,078.20.

The second count is based upon the alleged failure of the defendant to cause a refinery to be erected by a stipulated time, and having a capacity of 40,000 barrels per day. The count sets out that the delay in erecting the refinery and the necessity that Pan American obtain some of its requirements from another source (alleged to be a subsidiary of the defendant) caused a loss to Pan American of $6,848,823.47. The plaintiff then alleges that he, as the owner of 2.956% of the stock of Pan American, has been damaged to the extent of 2.956% of the total damage.

We shall not pause to consider in detail the many reasons which suggest themselves as showing that these damages are not only unliquidated, but incalculab'e by any formula set out in the contract, or ordinarily available as a basis of an affidavit specifying the amount of the indebtedness. We think such damages are general in character, as distinguished from those arising from an express or implied promise to pay.

We think the damages, assuming the plaintiff is entitled to recover them individually in a court of law, are not such damages as create an indebtedness the amount of which can be specified within the meaning of Sec. 4631, authorizing proceedings by foreign attachment.

We have confined our remarks herein, as did counsel, to the particular case as above entitled. The same reasoning applies to the companion cases against the same defendant, being Nos. 137 and 138, May Term, 1945.

▰▰▰ ▰

▰

The attachment made in the above-stated cases must be dissolved and the writs of foreign attachment against the defendant in such cases must be quashed.