JACOB BLAUSTEIN v. STANDARD OIL COMPANY, a corporation of the State of Indiana.

JACOB BLAUSTEIN, HENRIETTA BLAUSTEIN, FANNY B. THALHEIMER and RUTH B. ROSENBERG, Executors of Louis Blaustein, Deceased, v. STANDARD OIL COMPANY, a corporation of the State of Indiana. AMERICAN TRADING AND PRODUCTION CORPORATION, a corporation of the State of Maryland, v. STANDARD OIL COMPANY, a corporation of the State of Indiana.

200

(*December* 20, 1949.)

Pearson, J., sitting.

*Clarence A. Southerland* (of the firm of Southerland, Berl and Potter) and *Caleb S. Layton, Aaron Finger* and *Louis J. Finger* (of the firm of Richards, Layton and Finger) for plaintiffs.

*Hugh M. Morris, Edwin D. Steel, Jr.,* and *S. Samuel Arsht* (of the firm of Morris, Steel, Nichols and Arsht), and *Ralph S.*

*Harris, Thomas E. Sunderland, John R. McCullough* and *Fred W. P. Lorenzen* (of New York, New York, of counsel) for defendant.

Superior Court for New Castle County, Nos. 136, 137 and 138, May Term, 1945.

PEARSON, Judge.

*Plaintiff's Proposed Amendments.* The actions were begun by writs of foreign attachment in May 1945. Declarations were filed by plaintiffs in August of that year. Defendant raised jurisdictional and constitutional questions which were litigated during the next three years, and in May 1949, defendant filed answers to the declarations. In July 1949, plaintiffs asked leave to amend their declarations. This application is opposed by defendant. The original declarations each consisted of two counts, in common law form. The proposed amendments are in one count and are in a form which purports to comply with that prescribed by new Rules of the Superior Court, effective January 1, 1948. A brief statement of the contents of the declarations may be found in the opinion of the

Supreme Court, *Blaustein v. Standard Oil Co.,* 4 *Terry* 449, 454-456, 49 *A.* 2d 726, 728, 729. Defendant describes the original declarations and the differences between them and the proposed amendments to which it objects, as follows:

"Disregarding many immaterial allegations, the gist of the original declarations was that plaintiffs and defendant entered into an agreement under seal dated March 28, 1933; that the agreement contained several convenants, the principal one of which, in the first count, was that defendant had 'convenanted, agreed and obligated itself * * * *to cause* [italics supplied] Pan Am ("Pan Am" is an abbreviation used in the declarations to refer to Pan American Petroleum & Transport Company, the majority of the stock of which was and is owned by defendant, and a large minority of the stock of which was and is owned by the plaintiffs) immediately upon its reorganization * * * actively to proceed to secure its own sufficient crude oil production * * *: that defendant breached this covenant in that it 'failed, neglected and refused *to cause* Pan Am actively to proceed to secure its own sufficient crude oil production * * *.'

"In the second count plaintiffs relied principally upon the allegation that the agreement required defendant *'to cause* a refinery having a refining capacity * * for a thruput of 40,000 barrels of crude oil per calendar day * * * to be constructed * * .' The alleged breach was declared as follows: 'defendant failed and refused *to cause* a refinery having a capacity for a thruput of 40,-000 barrels of crude oil per calendar day * * * to be constructed * * *.'

"The damages claimed were calculated in each declaration down to the last penny. They were arrived at as follows: It was claimed in the first count that Pan Am had sustained damages of $255,-259,800.62 and in the second count that it had sustained damages of $6,848,823.47. Plaintiffs' own damages were based upon an

aliquot share of the damages alleged to have been sustained by Pan. Am, that aliquot share bearing the same relation to the two sums above mentioned as plaintiffs' holdings of stock in Pan Am bore to its entire outstanding stock. Thus, in action No. 136, plaintiffs' damages were alleged to have been $7,748,529.42; in action No. 137, $7,237,449.80; and in action No. 138, $35,218,306.24.

"The proposed amendments are not mere formalities for the purpose of correcting inadvertent defects. On the contrary, the amendments seek to alter the *gravamen* of plaintiffs' alleged claims in two substantial respects:

"(1) The obligations alleged in the original declarations, i. e., that the defendant agreed to 'cause' Pan Am to construct a refinery and acquire crude oil producing properties, are entirely eliminated. Instead, the amended declarations allege an entirely different convenant (although based on the same written instrument which is set forth in the original declarations), namely, that 'Defendant obligated itself by said Agreement of March 28, 1933, not, by any acts or ommissions on its part, to defeat the rights of the Blausteins, including the Plaintiff, under said Agreement.' The breaches now claimed are based upon several acts by defendant which plaintiffs claim were done 'with the intent and purpose of defeating the expressly declared purpose of Defendant's convenants and agreement * * *.'

"(2) The allegations of the damages alleged to have been sustained by Pan Am have been eliminated. In place of the carefully calculated and specific damages alleged in the original declarations, the amended declarations simply aver in round numbers the damages which plaintiffs claim they suffered without reference to Pan Am.

"The motions should be denied for the following reasons:
"(1) Since plaintiffs urged the validity of their writs of at-

tachment [when defendant raised the jurisdictional questions] on the ground that the damages alleged were liquidated or capable of ascertainment and asserted that they were measured by an aliquot share of Pan Am's damages, they should not, after the defendant has appeared generally, be permitted to amend so as to claim only unascertained and unliquidated damages;

"(2) Plaintiffs have failed to show good cause for the allowance of the proposed amendments; and

"(3) The allowance of the proposed amendments would unduly prejudice defendant."

Aside from the general instead of detailed allegation of damages, the important differences, for present purposes, between the declarations and the amendments are contained in paragraphs 15 and 17 of the amendments, which read as follows:

"(15) In and by said Agreement of March 28, 1933, it was provided, inter alia, that Pan Am would actively proceed to secure its own sufficient crude oil production as a reserve for the requirements of Pan Am and for such purpose immediately to allocate an initial sum of $3,000,000.00 to be expended under the supervision of the Board of Directors for the acquisition of crude oil producing properties, and that the Defendant would use its best efforts, resources and personnel to propose, establish and carry out a program for the establishment and maintenance of a backlog of crude oil properties sufficient for the operations of Pan Am, and also, inter alia, that Pan Am would provide a refinery having a refining capacity (including necessary cracking units) for a thruput of 40,000 barrels of crude oil per calendar day, making a maximum efficient yield of gasoline, said refinery to be constructed and fully completed and in commercial operation on or before February 10, 1934, provided such date of completion was reasonably possible, and that the Defendant would direct the construction of such a

refinery after competitive bidding and allotting of contracts, and the Defendant obligated itself by said Agreement of March 28, 1933, not, by any acts or omissions on its part, to defeat the rights of the Blausteins, including the Plaintiff, under said Agreement."

"(17) The Defendant has not performed and kept its convenants, agreements and obligations under said Agreement of March 28, 1933, but has broken the same in that the Defendant failed, neglected and refused to use its best efforts, resources and personnel to propose, establish and carry out a program for the establishment and maintenance of a backlog of crude oil properties sufficient for the operations of Pan Am but, instead, Defendant used its best efforts, resources and personnel to acquire, and it did acquire, through a substantially wholly owned subsidiary of Defendant, for Defendant's own benefit, such a backlog of crude oil properties with the intention of selling, and Defendant in fact caused to be sold, the oil produced therefrom to Pan Am, and Defendant did not use its efforts to have Pan Am acquire any crude oil properties prior to September, 1935, and Defendant failed, neglected and refused to direct the construction of a 40,000 barrel refinery to be completed on or before February 10, 1934, but instead made plans for and directed the construction of a refinery of only one-half of the agreed capacity, all with the intent and purpose of defeating the expressly declared purpose of Defendant's covenants and agreement, and by the said failures, neglects and refusals, and by its said acts and ommissions, the defendant did knowingly and intentionally defeat the accomplishment of said purpose."

■ Defendant's first ground of objection refers to contentions which plaintiffs made before this court and before the Supreme Court in opposition to defendant's motions to quash the writs on the ground that they were not authorized or supported by the Delaware Foreign Corporation Attachment Statute, *Rev Code* § 4631.

It is true that plaintiffs did contend that their damages were liquidated in the sense that the measure of damages was fixed by a formula established by law. That contention was not accepted by the Superior Court and was not passed upon by the Supreme Court (the Supreme Court held that the Delaware Statute authorized proceedings under it for any claim ex contractu). Compare: 4 *Terry* 222, 45 *A.2d* 527; 4 *Terry* 449, 49 *A.2d* 726. Thus Plaintiffs' contention cannot be said to have induced any favorable action by either court. In making the contention, plaintiffs were referring to the allegations of damages as contained in the declarations then before the court. What plaintiffs said about their damages as alleged in the declarations should not prevent them from substituting the different allegations with respect to damages, contained in the proposed amendments, in view of the liberality which must be, and has consistently been, allowed litigants under the provisions of the Delaware Constitution, *Art.* IV *Sec.* 24. This Article reads as follows: "Section 24. In civil causes, when pending, the Superior Court shall have the power, before judgment, of directing, upon such terms as it shall deem reasonable, amendments, impleadings and legal proceedings, so that by error in any of them, the determination of causes, according to their real merits, shall not be hindered; * * *."

Of like tenor and requiring like result here is Rule 15 (a) of this court, which reads thus: "Amendments. A party may amend his pleading once as a matter of course at any time before a responsive pleading is served or, if the pleading is one to which no responsive pleading is permitted and the action has not been placed upon the trial calendar, he may so amend it at any time within 20 days after it is served. Otherwise a party may amend his pleading only by leave of court or by written consent of the adverse party; and leave shall be freely given when justice so requires. * * *"

Under this point, defendant also objects to the proposed change

in the statement of defendant's obligations or duties under the contract and the allegations of breaches by the defendant. Defendant says that plaintiffs are attempting to "change the nature of the cause of action from one based upon 'non-causation' to one of 'prevention'." It seems hardly necessary to point out that I am not called on to decide upon the legal sufficiency of the allegations of either the original declarations or the proposed amendments, and, of course, shall not pass upon their sufficiency.

██ Both the declarations and the amendments purport to be based upon an agreement dated March 28, 1933. Plaintiffs' statements of legal obligation and duty on defendant's part and of breaches by it are different; but each purports to assert causes of action based upon the same resultant state of facts (that Pan Am has not acquired a "backlog" of crude oil producing properties, and that a refinery of certain capacity has not been constructed). In both the declarations and the amendments, plaintiffs assert responsibility on defendant's part for these situations, but allege different facts purporting to assert a casual connection between defendant and the situations indicated. Because of the obvious similarities, these differences do not amount to "changes in the nature of the causes of action" in the sense in which that expression is employed as a reason for disallowing an amendment. I have considered the case of *Shick v. Finch* (*D. C.*) 8 *F. R. D.* 639, cited by defendant. The situations are in my view distinguishable on numerous grounds, among which is the circumstance that the proposed amendment requested in that case was applied for on the eve of trial. However, to the extent that the rule of the Shick case may be deemed inconsistent with an allowance of the amendments here, I decline to follow it because of our constitutional provision and rule of court quoted above.

██ Defendant's second ground of objection is that plaintiffs have failed to show good cause for the allowance of the amend-

ments. It points out that the present actions were begun in 1945 and that the alleged breaches by defendant occurred in 1933. Further, that plaintiffs' motion papers do not purport to set forth any reason why this court should permit the amendments. In the argument and in plaintiffs' brief, they have indicated that their purpose is to put the pleadings in shape to make what they deem a more favorable presentation of their case; and to do so by attempting to clarify the statement of defendant's duty under the contract and the nature of the breach. At the present stage of the case, it seems to me that this is reason enough without requiring plaintiffs to state why their attorneys did not think of these changes sooner. The character of the changes proposed is such as to negative any suspicion that the plaintiffs are seeking to delay the course of the proceeding or take some unfair advantage of defendant.

Defendant's third ground of objection is that the amendments would unduly prejudice it. Defendant refers to the rule of law that a party should not be permitted to amend so as to remove record admissions which he has made in previous pleadings. Continuing, defendant says that plaintiffs alleged as their damages a pro rata share of the damages claimed to have been sustained by Pan Am by virtue of defendant's alleged breaches of contract. It argues that these allegations "clearly constituted admissions that plaintiffs suffered damages only indirectly as a result of damages allegedly inflicted by defendant upon Pan Am." Whether or not the allegations would amount to admissions, as defendant contends, if they remained unchanged throughout the course of the litigation is not the question here. But there can be no doubt that allegations of damages are a frequent subject of amendment, and defendant's argument is without merit.

Likewise with respect to defendant's ground of objection that it has expended time and money in the preparation of answers which total some 534 printed pages. The filing of lengthy answers does not preclude amendment of the declarations.

My conclusion is that defendant's objections to the amendments are insufficient, and that the amendments are properly allowable under the provisions of the constitution and rule of court referred to above.

*Plaintiff's Objections to Certain of Defendant's Interrogatories.* Superior Court Rule 33 authorizes any party to serve interrogatories upon an adverse party. The rule provides that "Interrogatories may relate to any matters which can be inquired into under Rule 26 (b) * * *." Rule 26 (b) reads thus: "Scope Of Examination. Unless otherwise ordered by the court as provided by Rule 30 (b) or (d), the deponent may be examined regarding any matter, not privileged, which is relevant to the subject matter involved in the pending action, whether it relates to the claim or defense of the examining party or to the claim or defense of any other party, including the existence, description, nature, custody, condition and location of any books, documents, or other tangible things and the identity and location of persons having knowledge of relevant facts. It is not ground for objection that the testimony will be inadmissible at the trial if the testimony sought appears reasonably calculated to lead to the discovery of admissible evidence."

Defendant has filed interrogatories in each of the three cases to be answered by the respective plaintiffs. The interrogatories are substantially similar in the three cases. Plaintiffs have objected to many of the interrogatories and have grouped them for the purpose of discussing the objections. Plaintiff's grouping will be followed in this opinion. The interrogatories were prepared with reference to the original declarations. Since leave has been granted to amend the declarations, I shall point out, where necessary, the effect of changes brought about by the amendments.

Group I: Interrogatories 4, 5, 11 (1) and 32 (b). These interrogatories read as follows:

"4. What is meant (and what does plaintiff claim is meant) by tne term "integrated enterprises" as used in the second sentence[1] in reference to the 'Standard Oil Companies'?

"5. To what extent (in terms of percentage of refinery thruput) does plaintiff claim that an enterprise, in the business of marketing petroleum products, must own its production of crude oil in order to be an integrated company or integrated enterprise?"

"11. With respect to the letter of March 28, 1933, set forth in the eleventh sentence, state: * * *

"(1) is not the term 'survival letter' well known and generally accepted in the business world; if so, what is its function?"

"32. * * *

"(b) State what plaintiff means by the word 'practically' used in connection with said phrase[2] 'practically preempted'. "

Plaintiffs object to these interrogatories on the ground that they ask for expressions of opinions as to the meaning of certain words, and for plaintiffs' conclusions and contentions as to such meaning, citing *Caggiano* v. *Socony Vacuum Oil Co.*, (*D. C.*) 27

---

1. This refers to the second sentence of the first and second counts of the original declaration, which is as follows:

"And the plaintiffs aver that in the operation of said business the Blausteins were continually faced with the competition of the Standard Oil Companies, particularly that of a New Jersey corporation also named Standard Oil Company (hereinafter sometimes referred to as 'New Jersey'), which competition was formidable, among other reasons, because those corporations with their subsidiaries constituted integrated enterprises, each with producing, refining, transporting and marketing facilities, whereas the business of the Blausteins was essentially marketing and depended largely, for its wares, upon competitive sources, particularly New Jersey which had been imposing terms that were becoming increasingly burdensome."

2. The phrase referred to is found in the following sentence in the declaration: "And the plaintiffs further aver that the opportunities for the acquisition of crude properties in said fields were practically preempted by defendant and others after the execution and delivery of said agreement of ties for or by Pan Am."

March 28, 1933, and before any attempt was made to acquire crude proper-

F. Supp. 240; *United States* v. *Columbia Steel Co., (D. C.)* 7 *F. R. D.* 183; *Cinema Amusements* v. *Loew's, Inc., (D. C.)* 7 *F. R. D.* 318. Defendant answers that the general rule in the Federal Courts that a party is not required to give his opinion as opposed to a statement of fact, in answer to an interrogatory, is not applicable to the present case.

■ Interrogatories are one of several procedures which serve, among other purposes, as a means of reducing and narrowing the disputed points in a case. *Aktiebolaget Vargos* v. *Clark, (D. C.)* 8 *F. R. D.* 635; *E. I. Du Pont De Nemours & Co.* v. *Byrnes, (D. C.)* 1 *F. R. D.* 34; *Schwartz* v. *Howard Hosiery Co., (D. C.)* 27 *F. Supp.* 443. The federal rules relating to interrogatories are substantially similar to ours. *Federal Rules of Civil Procedure, rule 33, 28 U. S. C. A.*

[7] Postponing a consideration of 11 (1), the interrogatories in question call for an explanation of certain terms used by plaintiffs in their declarations. It seems to me that an explanation of them would serve well the purpose of narrowing the issues and would make more precise the character and extent of plaintiffs' claims. I think of no substantial prejudice to plaintiffs in requiring them to explain what they mean. It is no answer that the words may be in every day use. Defendant is not concerned with the terms as such, apart from their use in their context here. We may assume that they were employed to serve a symbolic function, and the purpose of the inquiry is to obtain further explanation of whatever the terms were used to symbolize. Nor is it an answer to say that the expressions were used in connection with "background matter." Plaintiffs have used them, presumably for some purpose. That their meaning is not without significance in plaintiff's theory of their claims seems apparent from the declarations (and amendments). Again, it is of no consequence that the terms inquired about may not be what are usually called "technical" or "scientific" terms. The reasons for requiring an explanation are the same

whether the terms be technical or non-technical. For these reasons, the objections should be overruled. Compare: *E. I. Du Pont De Nemours & Co.* v. *Byrnes*, (D. C.) 1 *F. R. D.* 34; *Sikes Co.* v. *Swift & Co.*, (D. C.) 9 *F. R. D.* 19.

■ As to interrogatory 11 (1), the expression "survival letter" is not employed in the declarations and it is therefore not subject to the same considerations. In the preceding interrogatory 11 (k), defendant inquired whether the plaintiff Jacob Blaustein and his counsel had used that expression on a certain date. Since this is answered in the negative, it would seem that interrogatory 11 (1) need not be answered. Apart from this, I see no reason why defendant should be permitted to come forward with this expression and ask plaintiffs to define it. The objection is sustained.

Group 2: Interrogatories 19, 20, 38, 39, 40 and 41. These interrogatories read thus:

"19. Set out the language in the letter of March 28, 1933, wherein plaintiff claims in the fifteenth sentence of the declaration that defendant covenanted, agreed and obligated itself at New Castle County

"(a) 'to cause' Pan Am immediately upon its reorganization actively to proceed to secure its own sufficient crude oil production as a reserve for the requirements of Pan Am; and

"(b) to use defendant's 'best efforts, resources and personnel to propose, establish and carry out a program for the establishment and maintenance of a backlog of crude oil properties sufficent for the operations of Pan Am'.

"20. If the alleged covenants, referred to in the preceding question, or either of them, are not contained in the letter of March 28, 1933, quote the language (identifying its source) which plaintiff claims does constitute such a covenant."

"38. Quote the language contained in the letter of March 28, 1933, which plaintiff claims in the fifteenth sentence [of the second count of the declaration] constitutes a covenant on the part of the defendant 'to cause' a refinery having a refining capacity, including necessary cracking units, for a thruput of 40,000 barrels of crude oil per calendar day to be constructed and fully completed, etc.

"39. If the alleged covenant referred to in the preceding interrogatory is not contained in the letter of March 28, 1933, quote the language, indicating its source, which plaintiff claims does constitute such a covenant.

"40. Quote the language contained in the letter of March 28, 1933, which plaintiff claims in the fifteenth sentence constitutes a covenant on the part of the defendant 'not, by any affirmative act, to prevent the construction' of a refinery on or before February 10, 1934, 'at New Castle County'.

"41. If the alleged covenant referred to in the preceding interrogatory is not contained in the letter of March 28, 1933, quote the language, indicating its source, which plaintiff claims does constitute such a covenant."

Plaintiffs contend that these interrogatories request the construction of the language of certain contracts or documents and are objectionable as calling for contentions, opinions, and conclusions of the plaintiffs.

The letter of March 28, 1933, mentioned in the interrogatories, is quoted in the body of the declarations and is referred to as an agreement entered into by defendant. In the declarations, plaintiffs also state certain specific covenants which they say defendant made "in and by" the agreement of March 28, 1933; and later they allege breaches of the covenants so stated. The interrogatories ask plaintiffs to point out the source of the particular

covenants alleged in the declarations to have been entered into and breached by defendant; that is, from what specific language of the letter are they derived, or if not from the letter, from what language of what other document or utterance. This does not seem to me subject to the objection of asking for a legal conclusion. Plaintiffs' legal conclusions are already stated in their formulation of the covenants, which they assert are derived from a certain agreement. Defendant asks to have pointed out the language from which plaintiffs have previously derived their legal conclusions. Defendant does not ask plaintiffs to explain their reasons for concluding that particular language gives rise to particular duties or obligations. The interrogatories are proper to explain, define and limit the issues, and are not calculated to work undue hardship on plaintiffs. However, interrogatories 19 (a) (and reference to it in 20), 38 and 39 refer to allegations of the original declarations which are changed by the amendments discussed above and held allowable. Accordingly, plaintiffs need not answer these in their present form; but defendant may, if it wishes, reformulate them so as to refer to the amended allegations.

Group 3: Interrogatories 21, 22, 26, 27, 28, 29 and 36 (a). These interrogatories read thus:

"21. What is meant (and what does plaintiff claim is meant) by the phrase 'best efforts, resources and personnel' as used in the fifteenth sentence?

"22. State what plaintiff claims would have constituted, as of March 28, 1933, 'a program for the establishment and maintenance of a backlog of crude oil properties sufficient for the operations of Pan Am' and, in connection with the foregoing, state

"(a) the amount of money for each twelve-month period following March 28, 1933, which it is claimed should have been expended by Pan Am in connection with such a program; ·

"(b)    how much of said sum should have been expended in the acquisition of producing properties; how much money should have been expended for the acquisition of non-producing properties;

"(c)where should such properties, in each class, have been acquired;

"(d)    the number of barrels per day of crude production which it is claimed should have been realized, respectively,

"(i)    from producing properties so acquired; and

"(ii)    from properties non-producing at time of acquisition;

"(e)    in what manner should non-producing properties have been acquired;

"(f)    in connection with the acquisition of unproven properties, is it claimed Pan Am should have maintained its own exploration department;

"(g)    as of what date is it claimed that Pan Am should have been in a position to explore for unproven properties;

"(h)    as of what time is it claimed that Pan Am would have done sufficient exploring to warrant it in expending moneys for the acquisition of leases on unproven properties; and

"(i)    in what manner is it claimed that Pan Am could have obtained sufficient moneys to carry out the program for the establishment of a backlog of crude oil properties above described in answer to the preceeding interrogatory."

"26.    In connection with the carrying out of a 'program for the establishment and maintenance of a backlog of crude oil properties sufficient for the operations of Pan Am', state how many barrels of crude oil per day plaintiff claims Pan Am would have produced as of January 1, 1934, as of January 1, 1935, as of Jan-

uary 1, 1936, as of January 1, 1937, as of January 1, 1938, and for subsequent years until it is claimed such program would have been completed.

"27. (a) State what plaintiff means by the phrase 'land known or expected to be oil producing' used in the sixteenth sentence.

"(b) Are unproven or wildcat properties included in the phrase 'expected to be oil producing'?

"28. If not answered in answer to one of the preceding interrogatories, state the amount of money which it is claimed Pan Am would have been required to expend each year in establishing a program for the establishment and maintenance of a backlog of crude oil properties sufficient for its operations.

"29. (a) Does plaintiff claim that defendant should have loaned to Pan Am the funds necessary to carry out a program for the establishment and maintenance of a backlog of crude oil properties sufficient for the operations of Pan Am?

"(b) Does plaintiff claim that defendant should have given Pan Am the funds necessary to carry out such a program?

"(c) Unless one of the two immediately preceding interrogatories is answered in the affirmative, state the means by which plaintiff claims Pan Am should have financed such a program.

"(d) If plaintiff claims that the funds necessary to carry out such a program should have been borrowed, state the name of the person, corporation or institution which would have loaned the necessary funds to Pan Am for such a program and the terms and conditions upon which such loans could have been obtained by Pan Am."

"36. (a) Does plaintiff claim that defendant's alleged cov-

enant to use its best efforts, resources and personnel precluded the defendant or any of its subsidiaries from carrying out their own crude oil program ,including the acquisition of crude oil properties ?"

Plaintiffs object to them as asking for "plaintiff's opinion and construction of the meaning of the contract upon which plaintiffs are suing," citing *Hercules Powder Co.* v. *Rohm & Haas,* (*D. C.*) 3 *F. R. D.* 328. Plaintiffs have charged defendant with legal duties and obligations couched in highly abstract and vague terms. The terms do not indicate a particular set of acts, but may refer to any one of many combinations of acts, having different end results. It is about these terms that the interrogatories seek a more precise and detailed exposition. Where a defendant is charged with breach of duties or obligations so vaguely formulated (whether or not that formulation be part of an express contract assented to by the defendant), specification in reasonable detail of what the plaintiff claims the defendant should or should not. have done would seem likely to lead to simplification and limitation of points in dispute and, as well, to serve an underlying requirement of fairness in litigation. That requirement is that a defendant be explicitly apprised of what the plaintiff is complaining about. The interrogatories here seek a fuller explanation than that given in the declarations. If the case proceeds to trial, plaintiffs will inevitably have to make some fuller explanation, at some time. No reason appears why they should not do so now by answering the questions asked them. Any holding that a party may not be interrogated as to his contentions is subject to the basic purpose of simplification of issues. *United States* v. *Columbia Steel Co., (D. C.)* 7 *F. R. D.* 183. The information requested would serve the purpose, and the interrogatories should be answered. Compare: *Schwartz v. Howard Hosiery Co., (D. C.) 27 F. Supp.* 443; *Dugan* v. *Sperry Gyroscope Co., Inc., (D. C.) 35 F. Supp.* 902; *McInerney* v. *Mac Donald Const. Co., (D. C.) 28 F. Supp.* 557. Specification of amounts or quantities inquired about should occasion no sub-

stantial difficulty. For instance, interrogatory 22 (a) asks for a statement of the amount of money for certain periods which it is claimed should have been expended by Pan Am in connection with a particular program. Of course, it (contrary to what appears to be the case) plaintiffs' claims against defendant did not contemplate that any amount of money should have been expended by Pan Am, or that the amount of money expended for such purpose, little or great, was without any significance, then plaintiffs might so state in their answers. If their claims do contemplate that some amounts should have been expended for the purpose, then we must assume that they have in mind, if not a definite, at least some minimum amounts or range of amounts, and they may state what these are. Similar comments apply to the other interrogatories calling for a quantity or amount.

Group 4: Interrogatories 25, 30, 36 (b), 47 and 48 (this group originally included interrogatory 1, but at the argument, defendant's attorney, Mr. Harris, abandoned it). These interrogatories read as follows:

"25. After March 28, 1933, and throughout the time when it is claimed that defendant broke its alleged agreement to use its best efforts, resources and personnel with respect to the Pan Am program for acquiring crude properties

"(a) list any crude oil producing properties and properties expected to be oil producing, or any interest therein, which the plaintiff acquired or caused or suggested to be acquired for his own account or for the account of any business, other than Pan Am, carried on wholly or partly for the plaintiff's benefit or in which he or his family had a substantial interest;

"(b) list any crude oil producing properties and properties expected to be oil producing, or any interest therein, acquired (or with respect to which negotiations were carried on looking toward

the acquisition thereof) by any corporation or other business in which plaintiff or members of his family had an interest or by any corporation, through which he or members of his family were conducting their business;

"(c) list any crude oil producing properties and properties expected to be oil producing, or any interest therein, acquired directly or indirectly (or with respect to which negotiations were carried on looking toward the acquisition thereof) by American Trading and Production Corporation; and

"(d) list any crude oil producing properties and properties expected to be oil producing, or any interest therein, acquired either directly or indirectly (or with respect to which negotiations were carried on looking toward the acquisition thereof) by Crown Central Petroleum Corp."

"30.   Is it not a fact that many companies known as integrated oil companies produce only a relatively small percentage of the crude oil required for their refineries and obtain the balance by purchase from other producers?"

"36.   (a) * * *

"(b)   If the answer to interrogatory 36 (a) is in the negative, state how Pan Am could have acquired each of the crude oil properties which were acquired by a subsidiary of defendant and others, specifying this information in respect of each property which it is claimed Pan Am could have acquired."

"47.   With respect to a certain action entitled 'Jacob Blaustein, Henrietta Blaustein, Fanny B. Thalheimer and Ruth B. Rosenberg, as Executors of the Last Will and Testament of Louis Blaustein, Deceased. The Louis and Henrietta Blaustein Foundation, Inc., Jacob Blaustein and American Trading and Production Corporation, suing on behalf of themselves and on behalf of all stockholders of Pan American Petroleum & Transport Company

similarly situated, et al., against Pan American Petroleum & Transport Company and Standard Oil Company (Indiana), et al.' [263 App. Div. 97, 31 N. Y. S. 2d 934], originally brought in the Supreme Court of the State of New York on the basis of a complaint verified by Jacob Blaustein on the 25th day of January, 1937 (the action having originally been begun in the name of Louis Blaustein, Jacob Blaustein and American Trading and Production Corporation, but, upon the death of Louis Blaustein prior to the trial of the action, there being substituted in his place his executors above listed and the above listed Blaustein Foundation),

"(a) state who employed and paid for plaintiffs' attorneys in that action;

"(b) give the names of all attorneys employed in that action by or for the benefit of the present plaintiff;

"(c) state whether the attorneys employed by Jacob Blaustein, Louis Blaustein, the executors of Louis Blaustein and the American Trading and Production Corporation were in charge of the case on plaintiffs' side; and

"(d) state whether the attorneys referred to in the foregoing question did not conduct the case for the plaintiffs, putting in all evidence with respect to the merits of plaintiffs' claim, conducting all cross-examination, making all arguments and briefing and arguing all appeals."

"48. State the place and residence of plaintiff from March 28, 1933, to the date of the commencement of the present action."

Plaintiffs object to these interrogatories as calling for irrelevant and immaterial matter. Broadly speaking, the objection of irrelevancy and immateriality should only be sustained where it appears beyond reasonable doubt that the information sought could not be relevant or material and would not be reasonably calculated to lead to the discovery of admissible evidence. The reason for this is well stated in *Patterson Oil Terminals v. Charles*

*Kurz & Co.,* (*D. C.*) 7 *F. R. D.* 250, 251 as follows: "It is some-times difficult to determine from the pleadings all of the issues which will be developed at trial. The answers to interrogatories are not considered evidence until offered, as such, at trial. *Coca Cola Co.* v. *Dixi-Cola Laboratories, Inc.,* (*D. C.*) 30 *F. Supp.* 275. If it appears that the answer is not material or relevant, it can be excluded upon proper objection at that time. This procedure is better as a general rule than to deny the interrogatory and sub-sequently find that it would in fact have called for material and relevant evidence."

I shall now consider the interrogatories separately. Interro-gatory 25. In support of this, defendant argues: "Interrogatory 25 requires the listing of any crude oil properties acquired by plain-tiffs for their own account, or for the account of any business, other than Pan Am, in which they had a substantial interest, dur-ing the period when defendant is alleged to have broken its cov-enant to use its best efforts with respect to the Pan Am program for acquiring crude properties. That covenant was one made by all parties to the agreement, * * *. If that covenant imposed any legally enforceable obligation upon the defendant, it imposed a similar obligation on the plaintiffs. Thus, this interrogatory is material and bears directly upon the allegations in the seventeenth sentence of the first count of plaintiffs' declarations, in which it is averred that the plaintiffs have at all times performed all things required by the agreement on their part to be performed, and upon paragraph 17 of defendant's answer to plaintiffs' first count, which denies plaintiffs' averments. If as plaintiffs suggest, the *acquisition by subsidiaries of defendant,* prior to the time Pan Am entered into the production business, of crude producing properties which would have been attractive to Pan Am, is evidence of a breach of an obligation upon the part of the *defendant,* then the *acquisition by plaintiffs,* either directly or through entities in which they have a substantial interest, of similar properties, during that period is

evidence of *plaintiffs* non-performance of the covenants on their part to be performed."

■ Defendant has asserted in its third counterclaim for declaratory judgment that if there is a binding obligation upon defendant to use its best efforts, resources or personnel with respect to the backlog program, there is a like binding obligation upon plaintiff; and that "Plaintiff through various entities has also taken affirmative action contrary to the best interests of Pan Am in connection with its crude oil program." From the foregoing, it seems plain that the information requested cannot at this stage be held irrelevant or immaterial. The interrogatory should be answered.

■ Interrogatory 30. This interrogatory inquires about a usage of the expression "integrated oil companies." In view of interrogatories 4 and 5, which will be answered, this question seems superfluous. The inquiry is directed to an expression used by plaintiffs in their declarations. Having asked for an explanation of plaintiffs' meaning, as the expression was used by them, the information sought by the present interrogatory seems clearly irrelevant and immaterial. The objection is sustained.

■ Interrogatory 36 (b). Plaintiff objects that this calls for conjecture, surmise and an opinion. But in the declarations, plaintiffs alleged that, instead of using its efforts with reference to a backlog program for Pan Am, "defendant used its best efforts, resources and personnel to acquire, and did acquire, through a substantially wholly owned subsidiary of defendant, for its own benefit, such a backlog" of oil properties. With reference to this allegation, the interrogatory is directly relevant and material. If plaintiffs consider that all or part of the property acquired by defendant's subsidiary could not have been acquired by Pan Am, they should so state. If they mean by their allegations that the properties could have been acquired by Pan Am, then this necessarily implies that they have some notion of how this could have been

done. Instead of being a ground of objection, the extent to which plaintiffs consider any answer to the interrogatory conjectural may be of importance to defendant to know. The objection is overruled.

■ Interrogatory 47. This relates to certain defenses of res judicata and estoppel. The defenses have not been stricken. To reject the interrogatories would require a decision with respect to the defenses which would not be proper on the present hearing. The objection should be overruled.

■ Interrogatory 48. Defendant says that this interrogatory is relevant to its second defense, the bar of the statute of limitations. It argues that "The law in several jurisdictions is that the tolling provisions relating to the statute of limitations do not operate in favor of non-resident plaintiffs." Without passing on the validity of the legal proposition urged, the interrogatory will be allowed to elicit information in support of defendant's contention.

Group 5: The only interrogatory (No. 1) in this group has been withdrawn.

Group 6: Interrogatories 8 (c), 8 (d) and 23. They will be considered separately.

Interrogatories 8 (c) and 8 (d). These read thus:

"(c) Was there anything secret in the negotiations leading up to such 'sale' other than the normal pre-agreement negotiations between business enterprises?

"(d) If the answer to the preceding subdivision (c) of this interrogatory is in the affirmative, state in what respect the negotiations were abnormally secret."

■ Plaintiffs object to these on the ground, among others, that they call for opinions and conclusions as to what constitutes

"abnormally secret" and "other than normal pre-agreement negotiations." The objection is well taken. The "norms" implied in the interrogatory have not been demonstrated. Neither part of the interrogatory need be answered.

Interrogatory 23 reads thus: "23. Does the 'well understood meaning in the petroleum industry in the United States' of the phrase 'program for the establishment and maintenance of a backlog of crude oil properties sufficient for the operations of Pan Am,' referred to in the sixteenth sentence, mean (and does plaintiff claim it means) that Pan Am should have acquired crude oil production of its own equal to 100% of its refinery thruput; if not, the acquisition of what proportion of its thruput would have constituted such a program?"

Plaintiffs object on the grounds urged under group 3, and also contend that the interrogatory is answered in the declarations. The language of the declarations referred to is not such as to dispense with need for an answer to this inquiry. The objection is overruled for the reasons set forth in the discussion of group 3.

Lastly, I find no basis for plaintiffs' charge that the interrogatories objected to are harrassing or oppressive, or that they are designed to maneuver plaintiffs "into an unfavorable tactical position."

The objections to the interrogatories should be sustained as to 8 (c), 8 (d), 11 (1) and 30; and also as to 19 (a), 38 and 39 in their present form, subject to defendant's right to reformulate them as indicated above. The objections to the remaining interrogatories should be overruled.

Orders allowing the amendments of the declarations, and orders ruling on the interrogatories will be entered in accordance with this opinion.